## HOLDEN v. PINNEY.

The homestead is the family residence, and in order to constitute a homestead, there must be an actual occupancy, with the intention of dedicating the premises to such purpose. Residence is *prima facie* evidence of such intention, and imports notice.

When the premises have acquired the character of a homestead, by actual occupation, with such intention, the estate thus created cannot be destroyed, except by the concurrence of both husband and wife; neither will their removal from the premises operate as an abandonment.

The question of homestead is a question of fact, and the presumption arising from residence may be defeated by facts and circumstances *aliunde*.

A widow who has once applied to the Probate Court to have the last residence of her husband and herself set aside as a homestead, and has acquiesced for eighteen months in the order setting it so aside, is concluded by her own acts from afterwards claiming a lot on which they formerly resided, merely because she has ascertained that there are liens on the lot first set aside.

APPEAL from the Probate Court of Tuolumne County.

This was a proceeding of remonstrance, filed Oct. 20th, 1855, by the widow of Joshua Holden, deceased, against the granting of the petition of the administrator of the estate, to sell a certain lot known as one half of the Exchange Lot, being a part of No. 82, in the city of Sonora.    In support of the remonstrance, it was proved that Joshua Holden and his wife had resided a long time on the lot, it being held in joint tenancy by Holden and one Green, till June 17th, 1852, when Green quitclaimed to Holden.    On the day following, the premises were destroyed by fire, and Holden built a house on another lot, where he and his wife resided until his death.

In opposition to the remonstrance, it was proved that in October, 1853, the remonstrant had petitioned the Probate Court to set aside to her, as widow, the house and lot in which her husband resided at the time of his death, and for a stipend of one hundred dollars a month, which was granted by the Court, and acquiesced in by remonstrant till March, 1855, when she filed another petition, setting forth that the first order had been made without her knowledge; that the property set aside was encumbered with prior liens, and nearly valueless to her; that her husband's estate is insolvent, and praying that lot No. 82, on which she formerly resided, be set aside as the homestead, she having relinquished her right to the other.

The Court granted an order setting aside to her a portion of lot No. 82, known as the Omega Lot, being twenty-four feet by a hundred feet. Lot No. 82 is one hundred feet square.    Her petition for the whole lot was subsequently argued in June, 1855, on her behalf and for the creditors of the estate, and was overruled, the Court affirming its previous order giving her the Omega Lot.    The Exchange Lot and the Omega Lot together make lot No. 82, as marked on the city map.

The Court overruled the remonstrance, and ordered the sale as prayed for by the administrator, of all the estate of Holden, except the dwelling-house then occupied by the widow.    The remonstrant appealed.

*Robinson, Beatty & Botts,* for Appellant.

1. The residence of the family on the lot No. 82, from 1850 to the time of the fire, 1852, created a vested right of homestead. 4 Cal., 268, Taylor *v.* Hargous.

2. The petition of Mrs. Holden to set apart homestead and other property during administration, is a petition for property under the provisions of the Act in relation to the estates of deceased persons. Comp. Laws, p. 393, §§ 121, 122. And even if that be her petition, it cannot operate to deprive her of a vested right of homestead in lot 82, if she ever had it.

3. If the adjudication of the Probate Court goes for anything, it shows by the order of the 26th March, 1855, that her right of homestead in lot 82 is recognized by that Court. The attempt to restrict the right to a fraction of the lot, is a usurpation. If any issue were formed as to whether the whole lot was worth over $5,000, the District Court must try it. Const., Art. VI.

4. The order to sell the homestead is error, and injurious to appellant, as clouding her title.

*H. P. Barber,* for Respondents.

If Mrs. Holden had been dissatisfied with the order made on her own application and request, she should have dissented at the earliest possible period, and not have waited for the space of eighteen months, thus appropriating the property, and depriving creditors of the power of selling it, until by some vicissitude in the value of real estate, it had deteriorated in value, and the other lot had become more valuable than it was before.

The petitioner has made her selection, and cannot now be permitted to change off as she pleases, in derogation of the rights of creditors.

The whole case presents a mere question of fact, decided by the proper tribunal, the Probate Court.

The opinion of the Court was delivered by Mr. Chief Justice MURRAY. Mr. Justice TERRY concurred.

In Cooke *v.* McChristian, and Taylor *v.* Hargous, we attempted to give such a construction to the homestead law of this State as would reconcile some of its imperfections, but with no hope that we would be successful in establishing any rule which could be applied to all its absurdities and contradictions.

It was the earnest desire of this Court that the Legislature would have passed some act relieving these cases from the embarrassment which surrounds them, and establish this class of titles upon a well defined and substantial basis. Neither the wishes of the Courts, or of the Bar have, however, been realized in this respect, and we are left to determine each case upon its individual merits.

The conclusions drawn from the cases already decided are: First, that the homestead is the family residence, and in order to constitute a homestead, there must be an actual occupancy, with the intention of

dedicating the premises to such purpose. . Second, that *residence* is *prima facie* evidence of such intention, and imparts notice. Third, that when the premises have acquired the character of a homestead by actual occupation, with that intention, the estate thus created cannot be destroyed, except by the concurrence of both husband and wife; neither will their removal from the premises operate as an abandonment. Fourth, that the question of homestead is a question of fact, and the presumption arising from residence may be defeated by facts and circumstances *aliunde.*

Apply these principles to the present case. It appears that Holden and Green held the lot in question, as joint tenants, up to the 17th, on which day Green quitclaimed to Holden, and that the premises were destroyed by fire on the 18th. Under our previous decisions, the residence of Holden upon the lot, so long as it was held in joint tenancy, did not qualify the possession, or give to it the character of a homestead, and his actual residence upon the lot at the time when it was susceptible of receiving that character, by reason of the title being in him, was less than twenty-four hours. It then became necessary to determine (this occupancy, short as it was, having raised the presumption of dedication,) whether there had in fact been a dedication, and whether such was the intention of Holden. For this purpose, it was proper to inquire as to the character of the building destroyed, whether a dwelling-house or not. The fact that a new house was afterwards erected, which was regarded as the family residence; that no steps were taken to restore the former building, or to return to the locality; these questions appear to have been before the Court below, and to have been passed on. In addition to all this, the appellant is concluded by her own acts in the Court below. It is not shown that she did not authorize the attorney to appear for her, or that he is insolvent; on the contrary, she appears to have acquiesced in the decree, and to have accepted the stipend allowed by the Court for some eighteen months. To say the least, her application to have the lot 82 set apart as a homestead, comes, at this time, with a bad grace, and is devoid of equitable consideration. From an examination, we are satisfied that she has received even more than in strict law she was entitled to, and has therefore no reason to complain.

Judgment affirmed.