WILLIAM T. BALL *et al.* v. A. C. HOUSTON *et al.*

(Filed September 4, 1901.)

HOMESTEAD EXEMPTION—Occupancy is Essential to the existence of the Homestead Right. For the purpose of its creation or inception the occupancy must be actual, but when the premises have become invested with the homestead character, and the homestead has been once acquired, a constructive occupancy may be sufficient to retain it, and it will not be lost by a temporary absence with no intention of abandonment. The statute exempts only the homestead in fact, the place of the home; it does not undertake to exempt a contemplated future homestead, and therefore the mere intention to occupy the premises at some future time as a home, without actual occupancy, is insufficient to impress upon them the homestead character.

(Syllabus by the Court.)

*Error from the District Court of Logan County; before Jno. H. Burford, Trial Judge.*

*Cotteral & Hornor,* for plaintiffs in error.

*Dale & Bierer* and *Geo. S. Green,* for defendants in error.

STATEMENT OF FACTS.

The material facts in this case are as follows: In June, 1899, the plaintiff in error, defendant in the court below, being the head of a family, bought certain unimproved real estate, being the same involved in this action, situated in the city of Guthrie, Oklahoma territory, for the purpose, as he alleges, of making thereon a home for himself and family. In the same month he employed his co-defendant, Brickner, to build thereon a house; Brickner bought the ma-

terials therefor from the defendant in error, Houston; the gross amount of such material was five hundred and seventy-six and 9-100 dollars ($576.09), of which all was paid except a balance of ninety and 21-100 dollars ($90.21), which remained unpaid at the commencement of this suit.

The case was tried in the district court of Logan county, Oklahoma, and a judgment rendered in favor of the plaintiff, and a decree giving a lien for the amount against the real estate described in the petition. Motion for a new trial was made and overruled, exceptions saved, and the case is brought here for review.

Opinion of the court by

IRWIN, J.: The first error assigned and urged for a reversal of this case is, that the evidence fails to show any contract with the owner of the real estate or his agent by the plaintiffs claiming the lien, and consequently the lien should have been disallowed. In support of this, counsel for plaintiff in error cite the case of *Lumber Company v. Lobsitz,* 4 Okla. 355; but we think an examination of the case at bar and the case cited will show a great difference in the facts of the two cases.

In the case at bar it is alleged, and not denied, that Ball entered into a contract with Brickner to build a house on the premises described, and that Houston by his agent entered into a sub-contract with Brickner to furnish the material for said house, which, we think, brings the case strictly within the terms of the statute.

In the case cited the party seeking the lien is alleged

to be a joint party with one Perkins, who contracted in writing to build the house for the owner of the premises and furnish the material, and to do the work in a workman-like manner, and to warrant the material. The party claiming the lien furnished the materials to their joint partner in the contract; afterward the party claiming the lien repudiated and denied the authority of their agent to make the contract, and the court held that as the authority of the agent was repudiated by his principal, then there was no contract between the parties seeking the lien, and the party owning the premises, and for whom the house was built, and consequently no lien attached, and in this the case differs materially from the case at bar, and consequently is not authority to be followed in this case.

The second and only remaining assignment of error is, that as the defendant, Ball, had purchased the premises in question for the purpose, and with the intention, of making a home thereon for himself and family, it was exempt as a homestead, notwithstanding the fact that he had not actually occupied the same, and some very respectable authorities are cited in support of this position, but under the peculiar language of our statute we think the weight of reasoning and authority is against this position.

The language of our statute is, "that the same shall be used as a home for the family."

Webster defines the word "use" to mean: "The act of employing anything, or of applying it to one's service; the state of being so employed or applied; application; employment; conversion to some purpose; to make use; to put to

use; to employ; to derive service from; to use; to avail one's self of; to put to a purpose."

There seems to be a distinction between the word "use" and the word "occupy." "Occupy" means "to take or hold possession of; to hold or keep for use; to possess; to use; to hold possession; to be an occupant."

We are aware that the popular idea of a homestead is uniformly associated with that of the occupancy of the place so designated either in the past, the present or the future. The nature of the occupancy by which land may be impressed by the homestead character should always be carefully distinguished from the possession such as may be sufficient to serve as evidence of notice of title in the owner. The latter may be constructive, while the former must in every instance be actual in the sense that it should not depend upon paper evidence, the mere erection of improvements, the payment of taxes, or the exercise of personal control over the property to be affected. .

Mr. Thompson in his work on homestead exemptions, section 245, says:

"The chief reason why actual occupancy is insisted upon as a condition to the exemption of the homestead, is, that it may serve to notify the world that it is the place claimed by the owner as exempt; that such owner may not obtain credit upon the strength of his ownership of lands subject to the exemption, and so, by concealing its real character, pervert the beneficent provisions of the statute into an adjunct to the practice of fraud and deceit upon those persons who are disposed to give him credit relying upon his apparent solvency."

In the case of *Christie v. Dyer,* 14 Iowa, 441, Judge Wright, in pronouncing the opinion of the court, says:

"Until such occupancy, the proposed creditor cannot know what it is that may be claimed as exempt; if there is actual residence, however, he knows that the law gives exemption."

In *Eastman v. Robinson,* 23 Iowa, 208, the same court says:

"Occupancy of the premises, the use of the house thereon by the family, is essential to invest the property with the homestead character, and mere intention to thus occupy is not sufficient, though subsequently carried out, and it may therefore be subjected to a judgment rendered on a debt contracted prior to such occupancy, though not until after the purchase of the land on which the improvements are subsequently made."

In *Currier v. Woodward,* 62 N. H. 63, the court says:

"Occupancy is essential to the existence of the homestead right, and for the purpose of its creation or inception the occupancy must be actual; but when the premises have become invested with the homestead character, and a homestead has once been acquired, a constructive occupancy may be sufficient to retain it, and it will not be lost by a temporary absence with no intention of abandonment. The statute exempts only the homestead in fact, the place of the home; it does not undertake to exempt a contemplated future homestead, and therefore the mere intention to occupy the premises at some future time as a home, without actual occupancy, is insufficient to impress upon them the homestead character."

The supreme court of the United States in an opinion

rendered by the chief justice in the case of *Groshalz v. New-man,* 21 Wall. 481, uses the following language:

"A secret intention of the seller, not made known, can·not affect the purchaser. Unless the purchaser knew, or from the circumstances ought to have known, that the lots were a part of the homestead, he had the right to treat with and purchase from, the husband without the concurrence of his wife."

And in this case it was held:

"That the mere intention to make a lot a part of the homestead will not clothe the lot with exemption."

In *Holden v. Pinney,* 6 Cal. 234, in discussing the previous cases decided involving this question in that state, the court says:

"The conclusions drawn from the cases already decided are: First: That a homestead is the family residence, and in order to constitute a homestead there must be actual occupancy, with the intention of dedicating the premises to such purposes. Second: That when the premises have acquired the character of a homestead by actual occupation with that intention, the estate thus created cannot be destroyed except by the concurrance of both husband and wife; neither will their removal from the premises operate as an abandonment."

In *Benedict v. Bushnell,* 7 Cal. 246, the doctrine is laid down:

"Premises never assume the character of a homestead until acutal residence thereon by the family."

In *Gregg v. Boswick,* 33 Cal. 220, the court says:
"The particular land, and none other, which was actually occupied for homestead purposes by the claimant at

the time of making the declaration of homestead, will be exempt under its operation. The dedication for which the statute provides *ex proprio vigore* does not impress upon the land the equity of homestead."

In *Wlliams v. Davis,* 31 Ark. 446, the court says:

"A mere intention to build a dwelling house on a tract of land and occupy it as a homestead, does not impress it with that character until the intention is carried into effect."

In the case of *Lee v. Miller,* 11 Allen, (Mass.), 37, the court says:

"Making and recording a declaration under General Statutes, chap. 104, sec. 2, and beginning to build a house upon the land mentioned in such declaration will not entitle one to an estate of homestead therein until he actually occupies the same as a residence."

In *Drucker v. Rosenstein,* 19 Fla. 191, the court says.

"The property must, when claimed as exempt, be stamped with the character of a home by some circumstance other than the intention to make it so; a bare lot unoccupied cannot be a homestead; lumber placed upon it for the purpose of building is not occupancy, even though there may be a contract made for the building. It would be difficult to draw a line where exemption begins to attach to unimproved lands if this claim of immunity is allowed."

We are aware that the supreme court of the state of Kansas, and also of Texas, have relaxed this rule to a large extent, and have announced doctrines somewhat at variance with the propositions laid down in the cases cited; but, under the peculiar wording of our own statute, we think

that the Kansas and Texas supreme court have laid down a rule and enunciated a doctrine which is not consistent with the laws of this territory.

Counsel have cited other cases which indicate that in cases like the one at bar a court of equity should relax the rule as to homesteads, and allow the claim of plaintiff in error; but we do not think the case at bar is one which appeals very strongly to equity. The material for which the lien is sought in this case was actually used in the construction of the building which is now claimed by plaintiff in error as a homestead, and it would seem to us that honesty and fair dealing would dictate that, as between the owner of the building and the person furnishing the material, that the material should be paid for before the building constructed of that material should be held as exempt from any debts; and, on principles of reason and justice, the secret intention of the owner of the lot to make it a homestead should not be used to the prejudice of a party who relied upon the fact that he was the owner of said premises, and gave him credit to the extent of the material used in the construction of the house.

As we believe the authorities above cited lay down the true rule as to homestead exemptions, and as such authorities are inconsistent with the claims of the plaintiff in error, and there being no other assigned, and as we have examined the record and find no errors committed by the district court, we think its judgment should be affirmed, which is accordingly done.

Burford, C. J., having presided in the court below, not sitting; all the other Justices concurring.