## LAURIE *et al.* v. CROUCH *et ux.*

No. 3632.   Opinion Filed February 28, 1914.

(139 Pac. 304.)

1. **HOMESTEAD—Selection—Exemption.** The bare intention to create a home on a vacant lot at some future time, unaccompanied with actual occupancy of the lot, is not sufficient foundation upon which to base a claim of homestead exemption against an execution.

2. **SAME.** Where there is a fixed intention by the owner of a lot to presently occupy it as a home, accompanied with overt acts, which clearly manifest such intention, such as fitting up, building, or repairing a house thereon for occupancy, followed by actually moving therein, without unreasonable delay, it might have the effect, at least in equity, of impressing the homestead character, so as to render the property exempt as against claims arising prior to actual occupancy by the family.

(Syllabus by Brewer, C.)

*Error from District Court, Tillman County;*
*J. T. Johnson, Judge.*

Action by J. H. Crouch and wife against A. J. Laurie and Frank Carter, Sheriff, for injunction. Judgment for plaintiffs, and defendants bring error. Reversed and remanded, with directions.

*Wilson & Roe* and *W. E. Lindblad,* for plaintiffs in error.

*Hudson & Mounts* and *H. P. McGuire,* for defendants in error.

Opinion by BREWER, C.   On March 2, 1911, the district court of Tillman county made an order permanently enjoining the plaintiffs in error from selling, under execution, lots 11 and 12, block 28, Doneghy addition to the town of Grandfield, on a petition filed by J. H. Crouch and another, based on the claim that such lots comprised his homestead. This appeal is prosecuted to have this final order come under review. The defendants in error, Crouch and wife, plaintiffs in the court below, have filed no brief. The only question necessary for us to pass

upon is whether the court was justified, under the evidence, in holding that the lots in controversy had been impressed with the homestead character. If so, the order should stand. If not, it should be set aside.

From the abstract of the evidence, it appears that Crouch, who was a physician, bought five vacant lots, built a cheap stable or shed on two of them, in which he kept his horse for a time; that he contracted for them in 1909, and procured full title January 8, 1910; that he sold three of the lots, and paid the proceeds on the five bought. There was no dwelling house on any of the lots, nor were they at any time occupied by Crouch and wife as a home. Crouch, however, testified that, when he bought them, he intended at some future time to build a home on them. There is evidence that he tried to sell the two lots involved here, and at one time had a notice that they were for sale posted on the lots. The execution was levied on the lots on February 11, 1910, and was for the satisfaction of a judgment against Crouch and in favor of Laurie. Carter made the levy as sheriff, and is only concerned here in his official capacity.

Will the naked intention to build a house on vacant lots at some indefinite future time for use as a homestead be sufficient to exempt such lots from execution? We think not. The statute relating to homestead exemptions in force prior to statehood was construed by the territorial Supreme Court in *Ball v. Houston et al.,* 11 Okla. 233, 66 Pac. 358. The syllabus is:

"For the purpose of its creation or inception, the occupancy must be actual, but when the premises have become invested with the homestead character, and the homestead has been once acquired, a constructive occupancy may be sufficient to retain it, and it will not be lost by a temporary absence with no intention of abandonment. The statute exempts only the homestead in fact, the place of the home; it does not undertake to exempt a contemplated future homestead, and therefore the mere intention to occupy the premises at some future time as a home, without actual occupancy, is insufficient to impress upon them the homestead character."

But the language of the Constitution which was adopted differs somewhat from the statute considered in that opinion.

The portion of the law construed in the Ball case, *supra,* relating to homestead in cities, towns, and villages is:

" * * * The homestead in a city, town or village, consisting of a lot or lots, is not to exceed one acre with the improvements .thereon; provided, the same shall be used for the purpose of a home for the family. * * * "

. The Constitution (article 12, sec. 1) since adopted provides:

" * * * The homestead within any city, town, or village, owned and occupied as a residence only, shall consist of not exceeding one acre of land, to be selected by the owner. * * * "

This constitutional provision is embraced in section 3343, Rev. Laws 1910. A homestead is exempt from seizure and sale under execution or attachment or other species of forced sale, except under certain circumstances, by section 3342, Rev. Laws 1910.

In so far as the precise question we are dealing with is concerned, there does not seem to be very much difference between the present law ·and that in force in Oklahoma Territory. Both seem to contemplate occupancy as a home, as necessary to impress, in the first instance, the homestead character. Both the old and the new law provide that, if this character has once attached, no temporary renting of the homestead shall change its character as such; and, under our own decisions and, in fact, those of nearly all the states, statutes exempting homesteads should be liberally construed (*Irwin v. Walling,* 4 Okla. 128, 44 Pac. 219); but it is thought that the bare claim of intention to create a home on a vacant lot at some indefinite time in the future, unaccompanied with actual occupancy, would not of itself be sufficient foundation upon which to base a claim of homestead exemption.

The state of the law is very clearly set forth in A. & E. Ency. of Law, vol. 15, p. 575, as follows:

"Having in view the very meaning of the word 'homestead' and the policy of the homestead exemption provisions in the various constitutions and statutes, it may be laid down as a general rule that premises of a debtor do not constitute his homestead, and are not exempt as such, unless they are actually occupied and used by him as a residence or home for himself and his family, or, in some jurisdictions, unless there is at least a

*bona fide* and clearly defined and manifest intention to apply them to such use within a reasonable time. In many states occupancy is expressly required by the constitution or statute. In others it is· held necessary though not expressly required."

As sustaining the rule that occupancy is required, the author cites a vast array of cases from the states of Alabama, Arkansas, California, Dakota, Florida, Illinois, Iowa, Kansas, Kentucky, Louisiana, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nevada, New Hampshire, Ohio, and Texas. But, as said at page 578, vol. 15, A. & E. Ency. of Law:

"In other jurisdictions actual physical occupancy is not always necessary, but it is held, even where 'occupancy' is required by the constitution or statute, that a *bona fide* and clearly defined present intention to acquire and occupy certain premises as a homestead, evidenced by overt acts in fitting them up for such a purpose, and followed within a reasonable time by actual physical occupancy, the delay being only for the time necessary to effect removal to the premises, or to build needed improvements or repairs, or to complete a dwelling house in process of construction, or the like, renders the land exempt as a homestead from the time of its acquisition with such intent."

And we are led to believe that, under a liberal rule of construction, situations may be presented where the fixed intention to presently occupy a place as a home, accompanied with overt acts of preparation, such as fitting up or building or repairing a house for occupancy, followed by actually removing therein, without unreasonable delay, would have the effect, at least in equity, of impressing the homestead character, so as to render the property exempt against claims arising prior to actual occupancy. No such situation is, however, presented here, and we conclude that the court erred in granting the injunction in this case, and the cause must therefore be reversed and remanded, with instructions to vacate the order of injunction.

By the Court: It is so ordered.