## CHEROKEE NAT. BANK *et al.* v. RILEY.

No. 6480. Opinion Filed February 29, 1916.

(155 Pac. 1140.)

1. **HOMESTEAD—Judicial Sale—Purchase by Wife—Estoppel.**
Where the wife attends a sheriff's sale of a homestead, which homestead at the time is occupied by herself and family, and which sale is had to satisfy an individual indebtedness of her husband, created for no purpose for which the homestead could be legally sold, and at which sale she buys the property thus sold and accepts a deed from the sheriff and places the same of record, she is not estopped thereby from subsequently asserting a homestead claim in said property, and the sale thus made by the sheriff to her is void, and the deed conveys no title of said homestead to her.

2. **HOMESTEAD—Alienation by Wife Alone—Right.** The wife alone, under the laws of Oklahoma, cannot alienate the homestead by an express contract. Hence it follows that she cannot do so by parol declarations or negative silence, or any positive act or failure to act.

(Syllabus by Hooker, C.)

*Error from District Court, Craig County;*
*Preston S. Davis, Judge.*

Action by Jane Riley against the Cherokee National Bank and another, to vacate a judgment. Judgment for plaintiff, and defendants bring error. Affirmed.

*Riddle & Bennett,* for plaintiffs in error.

*W. M. Simms* and *T. D. Frear,* for defendant in error.

Opinion by HOOKER. C. In 1909 and 1910 one Moses Riley held the legal title to the real estate involved in this action, upon which he and his wife and family resided as a homestead. About the first of the year 1910, Moses Riley left the State of Oklahoma, and from that time on his wife and children occupied this property as their homestead. In October, 1910, the Cherokee National

Bank instituted a suit in the district court of Craig county against Moses Riley alone, upon an individual indebtedness due to it by him, and it proceeded against said Riley as a nonresident, procuring service by publication, and an attachment against the property involved in this action, which was at that time occupied by Jane Riley and her children as a homestead. Thereafter judgment was rendered in said action, sustaining the attachment and ordering the property to be sold to satisfy the debt due to the bank by Moses Riley. In due time this property was sold by the sheriff under the order of the court rendered in the aforesaid action, and at said sale Jane Riley was the highest and best bidder, and the sale was afterwards confirmed and a deed made by the sheriff to her. She obtained the money with which to pay the amount of her bid in said sale from this bank, who was the plaintiff in said action, and in order to secure the bank she executed to it a mortgage upon the land thus purchased by her, and by the same mortgage she secured an individual indebtedness due by her to another, and when this indebtedness matured, for which said mortgage was given as security, she made default, and the bank instituted suit in the district court of Craig county to recover a judgment upon the note due it by her and to foreclose its mortgage lien upon said property. Personal service was had upon her, and service by publication had upon Moses Riley, and also other parties, who claimed liens upon the property by virtue of the mortgage executed by her, were made defendants. No appearance was made in said action by her or Moses Riley, and thereafter judgment by default was rendered upon said note and mortgage in favor of the bank, and also in favor of the other parties holding a mortgage lien upon said property, and a sale of the prop-

erty was ordered to satisfy the same, which in due time was had, and at which sale B. A. McFarland, who was formerly an officer of the bank, but who was at that time a liquidating agent of the bank, became the purchaser. The sale was confirmed, and a deed made to him. Thereafter Jane Riley, on the 7th day of November, 1913, filed an action in the district court of Craig county, asking that the judgment rendered in the cause of the bank against Moses Riley be vacated, and that the sheriff's deed issued to her be canceled, and that she be declared entitled to a homestead in said property, to which action the bank and McFarland filed an answer, which was a general denial and a statement of the entire facts as above given, to which a reply of general denial was filed. The cause was tried before the court, and after the evidence was introduced the court rendered a judgment, setting aside the judgment in No. 834, which was the case of the Bank v. Moses Riley, in so far only as it affected the homestead in controversy, and also restraining the enforcement of the judgment rendered in case No. 1093, which was the action brought to foreclose the mortgage given by Jane Riley to the bank, and decreeing that Jane Riley was entitled to the premises as a homestead, and that neither the bank nor McFarland could dispossess or interfere with her possession and occupancy thereof. The bank and McFarland have appealed to this court.

It being an established fact that this property occupied by Jane Riley and her children constituted the home of Moses Riley as a homestead at the time of the institution of the suit of the bank against him, case No. 834, and at the time the sale of said property was had in said proceeding, the question is presented, Did Jane Riley waive her homestead right in such property by becoming the

purchaser at said sale, and is she estopped from asserting the homestead claim to this property by executing a mortgage to the bank to procure the money with which to purchase the property, and to secure an individual indebtedness due to other parties by her, or can her failure to assert a homestead in said actions before the judgments and the sale of said property bar her from now asserting a claim to the same? At first blush one would, perhaps, conclude that this question should be answered in the affirmative, as it is evident that she failed to assert her homestead claim, and failed to speak when she had every opportunity so to do, and as she apparently acquiesced in all the proceedings had. It is true that under the homestead laws of some of the states she would be held to have waived her homestead right, and would be estopped from asserting it now, but under our Constitution and statutes this is not true; for under the decisions of our court based upon the Constitution and the statutes, the sale of a homestead, except for the purposes and in the manner provided by law, is void. This being true, the sale of this property in the attachment proceedings in behalf of the bank against Moses Riley was void, and the deed of the sheriff to Jane Riley, which attempted to convey this property to her, was void, and conveyed no title whatever. This being true, it follows that the mortgage executed by her to the bank was likewise void, and conveyed no title to it, and the judgment of the court rendered in the foreclosure action, the debt named therein not having been created for any of the purposes for which a homestead could be sold, was likewise void, and the deed executed by the sheriff in said action conveyed no title to the purchaser. In the case of *Alton Mercantile Co. v. Spindel et*

*al.*, reported in 42 Okla. 210, 140 Pac. 1168, this court says:

"Section 3342, Rev. Laws 1910, reserves to every family residing in the state a homestead, which shall consist of the home of the family, whether the title to the same shall be lodged in or owned by the husband or wife, and said section exempts such homestead from attachment or execution, or any other species of forced sale for the payment of a debt. Section 3343 defines a homestead of a family, not in a city or town, to consist of not more than 160 acres of land. Sections 1 and 2, article 12, of the Constitution, and the foregoing sections of the statute provide for the exemption of 160 acres of land not within a city or town, as a homestead for the family, which cannot be alienated or incumbered unless the instrument be subscribed by both husband and wife. The requirement of a joint act on the part of the husband and wife to affect the homestead is a provision for the protection of the children, as well as for either parent, and the only exception to the rule is provided by section 1146 of the Revised Laws of 1910, where the husband or wife becomes hopelessly insane, in which case a sale could be made by application to and upon order from the proper court. The contention that Spindel and his children occupied the premises as their homestead from the spring of 1905 until some time during the year 1907 is not disputed, nor is the fact that his wife was insane and confined in an asylum in * * * Illinois disputed. When S. and his children moved upon this land in the spring of 1905, with the intention of making it their home, the premises became impressed with the homestead character, and no act or omission on the part of S. without the consent of his wife could result in abandonment of the homestead by the family. The homestead is for the benefit of the entire family, and such joint interest is to be regarded as paramount to the rights of any individual member thereof. It was held in *Morris v. Ward*, 5 Kan. 239, that: 'No alienation of the homestead by the husband alone, in whatever way it may be effected,

is of any validity. Nothing that he alone can do, or suffer to be done, can cast the slightest cloud upon the title to the homestead; it remains absolutely free from all liens and incumbrances.' See, also, authorities cited. George Spindel, a married man, having selected the premises in controversy as a homestead, could not divest the premises of a homestead character by abandonment, without the free consent of his spouse; and, she being insane, and thereby unable to give her free consent, no act nor omission on the part of George Spindel would operate to divest the premises of its homestead character."

Likewise in the case of *Whelan v. Adams et al.*, reported in 44 Okla. 696, 145 Pac. 1158, L. R. A. 1915 D, 551, this court held:

First: "Section 2, art. 12, of the Constitution prohibits the sale of the homestead of the family, where the owner is a married man, without the consent of the wife, given in such manner as may be prescribed by law."

Second: "An attempted conveyance by deed of the homestead of the family, by a married man, given without the wife's consent in the manner prescribed by law, is void."

Third: "Where the relation of husband and wife exists, the deed of the former to the homestead of the family conveys no title, and this notwithstanding the fact that the husband and wife be living separate and apart, or even though the wife may have, without justifiable cause, abandoned the husband."

See authorities cited in 44 Okla. 701-705, 145 Pac. 1160, 1161.

And in the course of the opinion in this case the court says:

"We deem the fact of what caused the wife to leave and remain away from home, and whether her abandonment was voluntary or involuntary, as immaterial. They

were still husband and wife, never having been divorced, and there is no exception written in our Constitution authorizing the husband to sell the homestead without the wife's consent, upon her voluntary abandonment of him. Neither are we disposed to write into the language used an implied exception."

See authorities cited.

Further, the court says:

"Section 883, Wilson's Rev. and Ann. Stat. 1903, provided that, the husband or wife executing the instrument relating to the homestead, without being joined with the other, it could only be avoided by the one not joining. In *Maloy v. Cameron*, 29 Okla. 763 [119 Pac. 587], Justice Williams called attention to the fact that said section did not appear to have been extended in force by the Constitution. This observation, in our judgment, stated a correct conclusion. The statute mentioned is, without doubt, repugnant to section 2, art 12, of the Constitution, providing how the homestead of the family may be sold, and was therefore not put in force by section 2, art. 25, of the Constitution. By section 82, Wilson's Rev. and Ann. Stat. of 1903, it is provided that, where the title to the homestead is in the husband, and the wife abandons him for the period of one year, or from any cause takes up her residence outside of the state, he may convey, mortgage, or make any contract relating thereto without being joined therein by her. We think that this section of the statute must likewise fall. To hold otherwise would be to create an exception, whereby when one of the two facts appears, the husband could convey the homestead without the consent of his wife. The fact that the wife may have, without cause, taken up her residence outside of the state, or that she may voluntarily abandon her husband for a period of one year, does not, of itself, dissolve the marriage relation."

And in this opinion they quote extensively from a Tennessee case as follows:

"The homestead is a property right fixed in our Constitution. * * * Its extent and duration are also fixed by it. The method of its alienation where the marriage relation exists is prescribed by it, and that is by the joint consent of the husband and wife. Legislation subsequent to the adoption of the Constitution prescribes how this joint consent shall be given. We are of opinion that it is not competent for the Legislature to provide for the alienation of the homestead without the joint consent of the husband and wife, when that relation exists, simply because the Constitution says, in explicit terms, that it shall not be alienated otherwise."

And, further, the court in the Whalen case says:

"The clause 'given in such manner as may be prescribed by law' in section 2, art. 12, of the Constitution, deals only, as the context clearly shows, with the form of the consent to the sale of the homestead; such, for instance, as whether the deed of conveyance should be executed jointly by the husband and wife, whether the wife should be privily examined by the officer taking her acknowledgment, or what officer was authorized by law to take such acknowledgment."

Section 2, art. 12, of the Constitution is as follows:

"The homestead of the family shall be, and is hereby protected from forced sale, for the payment of debts, except for the purchase money therefor, or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon; nor shall the owner, if married, sell the homestead without the consent of his or her spouse, given in such manner as may be prescribed by law: Provided, nothing in this article shall prohibit any person from mortgaging his homestead, the spouse, if any, joining therein; nor prevent the sale thereof on foreclosure to satisfy any such mortgage."

In the case of *Gooch v. Gooch,* reported in 38 Okla. 304, 133 Pac. 242, 47 L. R. A. (N. S.) 480, this court held:

"To hold that a husband who deserts his wife and minor children and refuses them the care and support that the law imposes upon him may, by such violation of his duties, become entitled to the exclusive possession of the family homestead, or any part thereof, would be to turn his wrong into a profit, which the law will not do. There can be no doubt that so long as he continues a member of the family and discharges his duty toward them he may be permitted to occupy and enjoy jointly the benefits of the homestead with the members of his family; but the mere fact that he was the head of the family does not give him **any superior rights therein, when he** himself seeks to sever the family relation by desertion and lives apart from them."

Upon the question as to whether Jane Riley is now estopped from asserting a claim to a homestead in and to said property, we desire to quote from Thompson on Homestead and Exemption, sec. 639, as follows:

"Upon the question whether the debtor must bring his right of homestead to the notice of the levying officer at or before the sale, or whether the officer must of his own accord take notice of the existence of the debtor's homestead and protect it, the cases present a conflict of authority. In Missouri, New Hampshire, North Carolina, Iowa, Illinois, Arkansas, and Nevada, the right is not lost by the failure of the debtor thus to claim it.  *  *.  * "

Section 645 of the same authority:

"If, as held in many states, considerations of public policy prohibit the head of a family from waiving an exemption intended for the benefit of those dependent upon him, at the time of contracting an indebtedness, and where the waiver is, perhaps, the main consideration for granting the credit, upon stronger grounds, in the absence of statutory expression, it must be concluded that he cannot, without consideration, waive this privilege at the time when his property is levied upon under an execution.

\* * * The reason of this rule has been well stated by the Supreme Court of Michigan: . 'When the householder is a married man, he cannot, probably, by any waiver, consent to a sale on execution so as to render such sale valid without the consent of his wife. For in such case the validity of the sale would rest upon his consent in the same manner as if he had conveyed by deed; and, if deeded by him under like circumstances, the deed would be void, even as to him, without the signature of his wife. Such, we think, is the effect of the express provision of the Constitution. The object of the exemption was quite as much to protect the wife and family as the husband.' The Supreme Court of North Carolina has gone a step further, and held that the debtor does not forfeit his homestead by such declarations made at an execution sale as would ordinarily estop a person from afterwards asserting title to his property, as denying title to the property. And, however reprehensible such conduct may be, the conclusion seems incontrovertible; for the homestead reservation is a substantive right of the wife, which can only be divested by her deed, executed in conformity with the statute."

Section 823 of the same authority:

"Does this principle apply so as to preclude a debtor, who stands by and suffers his chattels to be sold under an execution without asserting his exemption, from afterwards claiming the goods of the purchaser? From what is elsewhere seen in this chapter, it is obvious that different courts will answer this question differently. Those courts which hold that the chattel exemption is a mere personal privilege, which is lost unless asserted by the debtor before the execution sale, will have no difficulty in answering it in the affirmative. But the familiar doctrine that estoppels bind not only parties, but also privies in blood and estate, will evidently not be extended so as to permit the declarations or acts *in pais* of the head of a family to conclude the rights which the other members of it have under the exemption laws, in view of those courts which hold

that he cannot release such rights by express contract; since if one man cannot confer upon another a given right by his deliberate contract, founded on a valuable consideration, he evidently cannot confer it by parol declarations or mere negative silence. * * * In other words, a right which I cannot part with by express contract, because it is only in part mine, I cannot, for the same reason, lose by estoppel in consequence of my own act or failure to act."

In Cyc. p. 619, sec. 3, we find the following:

"Where, after a judicial sale of lands, one who is entitled to a homestead therein accepts a lease from the purchaser, he is not estopped from claiming his homestead; nor is the claimant of a homestead exemption estopped by the fact that, when the property descended to him from an ancestor, he also occupied as the latter's descent; nor can the statutory requirement of joinder by a wife in the husband's conveyance be obviated by the husband acknowledging himself as the tenant of another. * * * *"

We, therefore, conclude that the judgment of the lower court was correct and proper in vacating the judgment rendered in the attachment proceedings and holding the deed executed by the sheriff to Jane Riley void and restoring to her her homestead right in this property, and we recommend that his cause be affirmed.

By the Court: It is so ordered.