### CHISHOLM et al. v. CREEK & INDIANA DEVELOPMENT CO. et al.

(District Court, E. D. Oklahoma. May 10, 1921.)

No. 2596.

1. **Homestead ☞118(3)—Wife must join in oil and gas lease in Oklahoma.**

   Under Const. Okl. art. 12, § 2, and Rev. Laws Okl. 1910, §§ 1143, 1145, 1146, 3343, relating to conveyances of a homestead, the wife must join with the husband in the execution of an oil and gas mining lease covering the homestead.

2. **Courts ☞366(19)—State decision as to effect of homestead laws is controlling.**

   A decision of the Supreme Court of the state of Oklahoma that the wife must join with the husband in the execution of an oil and gas mining lease covering the homestead in that state is controlling on the United States District Court.

3. **Indians ☞13—Homestead under state law may include allotment homestead and tribal surplus allotment.**

   The homestead of an Indian in Oklahoma may, under Const. Okl. art. 12, § 1, and laws of that state, include not only the homestead allotment, which is a term used in treaties and acts of Congress for classification in the imposition of restrictions, but may also include the tribal surplus allotment, provided the two do not exceed 160 acres.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**4. Indians ⚖⇒16(3)—Extension of oil lease on homestead must be signed by wife, notwithstanding approval by Secretary of the Interior.**

Though an oil and gas lease on an Indian allotment, which did not contain any provision for extension thereof, and a subsequent extension and modification of the lease, were executed in conformity with Act July 1, 1902, Act April 21, 1904, and Act May 27, 1908, and the regulations thereunder, and were approved by the Secretary of the Interior, the extension, which was executed after the Indian had married and established his homestead on the land, was not binding on the wife, if she did not join therein, as required by the state Constitution and laws, since the approval of the Secretary was not conclusive that the extension was executed in conformity with the state law, which was essential to its validity.

**5. Homestead ⚖⇒122—Facts held not to estop wife's repudiation of oil lease on homestead.**

The fact that an Indian allottee had collected an oil royalty on the basis provided by an extension of the lease, executed after he had married and established his homestead on the property, and that additional wells had been drilled under the extension, does not estop the wife from repudiating the lease because she did not join therein, where she did not learn of the extension until five years after it was executed, and shortly before she brought suit to cancel it.

**6. Homestead ⚖⇒133—Lessee's credits after repudiation of extension of oil lease on homestead stated.**

In an accounting after the cancellation of an oil lease extension covering the homestead, which was executed without the wife's consent, the lessee is entitled to credit for the difference between the royalty paid under the extension and that which would have been payable under the original lease, and also for the sum expended in completion of wells on the premises after the extension was executed.

In Equity. Suit by Pearl Chisholm and others against the Creek & Indiana Development Company and others. Finding for plaintiff.

S. R. Lewis and O. S. Booth, both of Tulsa, Okl., and Langley & Langley, of Pryor, Okl., for plaintiffs.

Alvin Richards and West, Sherman, Davidson & Moore, all of Tulsa, Okl., for defendants.

WILLIAMS, District Judge. The following questions are essential for determination:

(1) Was it necesary for the wife to join with the husband in the modification and extending or renewal of the oil and gas mining lease on the part of the husband, the original having been executed prior to their marriage, and the homestead status having attached subsequent to such original execution, but prior to the execution of such modifying and extending or renewing instrument, both instruments having been approved by the Secretary of the Interior?

(2) Are the plaintiffs estopped from setting up the failure of the wife to join in the execution of the second instrument?

[1] The "owner, if married," may not "sell or grant" the homestead without the consent of his or her spouse, in the manner as is required by the statute. Section 2, art. 12, Constitution of Oklahoma; section 303, Williams' Anno. Ed.; section 3343, R. L. Okl. 1910. The third proviso to section 1, article 12, Constitution of Oklahoma (section 302, Williams' Ann. Ed.), provides:

---

⚖⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"Nothing in the laws of the United States or in the treaties with Indian Tribes in the state shall deprive any Indian, or other allottee, of the benefit of the homestead and exemption laws of the state."

See Montana v. Rice, 204 U. S. 291, 27 Sup. Ct. 281, 51 L. Ed. 490; Goudy v. Meath, 203 U. S. 146, 27 Sup. Ct. 48, 51 L. Ed. 130; Romine v. State, 7 Wash. 215, 34 Pac. 924.

No conveyance or contract relating to the homestead except a lease for a period not exceeding one year is valid unless in writing, subscribed by both husband and wife, where both are living and not divorced or legally separated. Section 1143, R. L. Okl. 1910; Kelly v. Mosby, 34 Okl. 218, 124 Pac. 984. As to exceptions, see sections 1145 and 1146, R. L. Okl. 1910.

[2] As determined by the Supreme Court of the state of Oklahoma, which as to such matters is controlling on this court, the wife must join with the husband in the execution of an oil and gas mining lease covering the homestead. Carter Oil Co. v. Popp, 174 Pac. 747; McCrary v. Miller, 78 Okl. 16, 184 Pac. 782, 186 Pac. 1089; Treese v. Shoemaker, 80 Okl. 235, 195 Pac. 767.

[3] The term "homestead," pertaining to allotments of members of the Five Civilized Tribes in Oklahoma as used in treaties and acts of Congress, is for the purpose of classification in the imposition of restrictions. The obvious purpose was to provide a more permanent restriction for the land classed as "homestead" allotment. Under the Constitution and statutes of Oklahoma, the tribal surplus allotment, as well as tribal homestead allotment, may constitute a rural "homestead" under the state law, provided same do not comprise over 160 acres. See Belt v. Bush, 176 Pac. 935; Norton v. Kelley, 57 Okl. 222, 156 Pac. 1164; Hyde v. Ishmael, 42 Okl. 279, 143 Pac. 1044; section 1, art. 12 (section 302, Williams' Ann. Ed.) Constitution of Oklahoma.

In the original lease, executed May 14, 1904, for a period of 15 years from that date, and covering the south half of the southeast quarter of section 13, township 21 north, range 12 east of the Indian Meridian, which constituted both his tribal "homestead" and "surplus" allotment, the lessee was granted—

"the right to prospect for, extract, pipe, store, refine, and remove such oil and natural gas, and to occupy and use so much only of the surface of said land as may be reasonably necessary to carry on the work of prospecting for, extracting, piping, storing, refining, and removing such oil and natural gas, including also the right to obtain from wells or other sources on said land, by means of pipe lines or otherwise, a sufficient supply of water to carry on said operations, and including still further the right to use such oil and natural gas as fuel so far as it is necessary to the prosecution of said operations."

The plaintiff, Webster Chisholm, the allottee, a half-blood Cherokee Indian, at the time of the execution of the lease and its approval by the Secretary of the Interior, was a single person. Prior to March 9, 1914, on, to wit, November 11, 1911, he married his coplaintiff, Pearl Chisholm and in April, 1912, took up his residence on said tract of land; a homestead character attaching and continuing and existing when he executed, without the joinder of his said wife, the modifying and extending or renewal stipulation or lease. Neither in the original

lease is any provision, either expressly or impliedly, contained stipulating for an extension or renewal of said lease on the part of said lessor, nor is such authority provided for in any rules and regulations on the part of the Secretary of the Interior then in force. Section 72 of Act of Congress approved July 1, 1902 (32 Stat. 716), provides:

"Cherokee citizens may rent their allotments when selected for a term not to exceed one year for grazing purposes only, and for a period not to exceed five years for agricultural purposes, but without any stipulation or obligation to renew the same; but leases for a period longer than one year for grazing purposes and for a period longer than five years for agricultural purposes and for mineral purposes may also be made with the approval of the Secretary of the Interior and not otherwise. Any agreement or lease of any kind or character violative of this section shall be absolutely void and not susceptible of ratification in any manner, and no rule of estoppel shall ever prevent the assertion of its invalidity."

See Jennings v. Wood, infra.

By Act of Congress of April 21, 1904, 33 Stat. 204, it is provided that:

"And all the restrictions upon the alienation of lands of all allottees of either of the Five Civilized Tribes of Indians who are not of Indian blood, except minors, are, except as to homesteads, hereby removed, and all restrictions upon the alienation of all other allottees of said tribes, except minors, and except as to homesteads, may, with the approval of the Secretary of the Interior, be removed under such rules and regulations as the Secretary of the Interior may prescribe, upon application to the United States Indian agent at the Union agency in charge of the Five Civilized Tribes, if said agent is satisfied, upon a full investigation of each individual case, that such removal of restrictions is for the best interest of said allottee. The finding of the United State Indian agent and the approval of the Secretary of the Interior shall be in writing and shall be recorded in the same manner as patents for lands are recorded."

On April 23, 1904, regulations were prescribed by the Secretary of the Interior permitting individual citizens of the Cherokee Nation, Indian Territory, to extract minerals from their allotments, wherein it was provided that:

(a) "Citizens of the Cherokee Nation desiring to develop their allotments for the purpose of extracting oil or gas, or mining coal or other minerals upon said lands, without entering into leases with other persons for such purposes, are required to first procure authority from the Secretary of the Interior in the following manner:

"(1) Application to be made first to the United States Indian agent at Union agency, and to be transmitted through the customary channels to the Secretary of the Interior for consideration; and only such applications as were of date subsequent to that of issuance of allotment certificate by the Commission to the Five Civilized Tribes to the allottees to be considered;

"(2) Such application under oath to give full name of allottee, date and number of the allotment patent or certificate, together with a description of the land, and also to state fully purpose, extent, manner, and character of the proposed operations, and amount of the capital or resources at hand for development and operation;

"(3) No operation to be made through a third party;

"(4) No development to be begun until approval obtained and authority granted by the Secretary of the Interior;

"(5) Permit to be revoked by the Secretary of the Interior if investigation demonstrates breach of conditions;

"(6) United States Indian agent to make report and recommendations."

Said rules and regulations were in force and effect when said lease of May 14, 1904, was approved. By section 2 of Act of May 27, 1908, 35 Stat. 312, a limitation as to restricted lands of the Five Civilized Tribes is imposed on state agencies as to the age of minors, and also required the leases of all restricted lands for oil and gas or other mining purposes, and of such restricted homesteads, for all purposes, for more than one year, and of such restricted lands, for other purposes, for more than five years, to be made, with the approval of the Secretary of the Interior, under rules and regulations promulgated by him and not otherwise. Rogers v. Rogers (D. C.) 263 Fed. 160. On April 20, 1908, new rules and regulations were promulgated, and on June 20, 1908, such rules and regulations for the mining of lands of the Five Civilized Tribes were repromulgated.

The renewal or extending agreement on the part of the said Webster Chisholm which was executed on March 9, 1914, for a consideration of $1 and other and further recited valuable considerations, not therein specifically expressed, recites:

"Said lease is hereby modified so as to in all respects conform to the terms and conditions of the lease form authorized and adopted in pursuance of the amended regulations approved by the Secretary of the Interior on February 6, and June 29, 1911, * * * and all terms and conditions of said original lease contract in conflict therewith are hereby abrogated and held for naught: Provided, however, that nothing herein contained shall be construed to change the date of said above described lease or the date from which rents and royalties thereunder shall be computed and be payable."

The land covered by this lease had been prospected and developed and oil found in paying quantities by the lessee on March 9, 1914, when by amendment and modification an attempt was made to extend said lease for a period "as much longer thereafter as oil or gas is found in paying quantities."

By the Act of March 3, 1901, every Indian in the Indian Territory became a citizen of the United States. 31 U. S. Stat. at Large, c. 868, p. 1447. By section 2 of the Enabling Act "all male persons over the age of twenty-one years who are * * * of any Indian nation or tribe in said Indian Territory and Oklahoma * * * are hereby authorized to vote * * * and * * * shall be eligible to serve as delegates." 34 U. S. Stat. at Large, c. 3335, p. 268. Obviously this legislation was in mind when section 1 of article 3 of the Constitution of the state of Oklahoma was framed, wherein it was provided that "male persons of Indian descent native of the United States," when possessing the necessary qualifications as to age and residence, etc., should be qualified electors in said state. In Jennings v. Wood et al., 192 Fed. 507, 112 C. C. A. 657, involving the validity of an oil and gas lease executed by a minor of the age of 15 years, as approved by the Secretary of the Interior, it is said:

"An approval which proceeds upon a consideration of the terms of the instrument offered and whether they are reasonably for the interests of the Indian was intended as an additional safeguard for his protection. It would not, however, reach back and supply or confirm all the essential, legal prerequisites of a valid contract. It was no more a conclusive determination that the lessor, though a minor, was an adult, than that he was sound mentally or that he belonged to the class or his land was of the character covered by the

273 F.—38

statute, if in fact those conditions were wanting. The instrument went to the Secretary of the Interior as lease competently executed and he could act on that presumption. He might properly make preliminary inquiry for his further assurance and he doubtless would decline to approve if advised of fatal defects, but he was not required to investigate and decide judicially matters lying back of and not appearing upon the face of the instrument. If he did his decision would not be conclusive."

Webster Chisholm, on March 9, 1914, at the time he executed the extension, renewal, or modification of the original lease, was not only an enrolled half-blood member of the Cherokee Tribe of Indians and a citizen of the United States, but also a citizen of the state of Oklahoma. When entering into a contract affecting lands located therein, it was necessary that such contract should be made in conformity with the laws of the state. In addition thereto, in so far as it affected a restriction upon him or his rem as a member of said tribe imposed by the laws of Congress, or Indian treaty, such contract must conform thereto in order to be completed or have validity.

Attention has been called to Molone v. Wamsley et al., 195 Pac. 484, construing section 2, c. 198, Session Laws of 1915, which provides:

"All petitions for the approval of deeds to lands inherited by full-blood Indian heirs shall be verified by one or more of the grantors, and shall contain" certain information.

It was there held that the state Legislature had no power to enact a statute which affected the validity of a conveyance by full-blood heirs on account of its approval by virtue of section 9 of Act of Congress approved May 27, 1908, and which in effect limited the power of such federal agency as to such approval.

[4] The county court, in approving such conveyance, was a federal agency acting in an administrative and ministerial capacity. Any legislative act of the state of Oklahoma which sought to limit such agency, in that it would render void the conveyance, if not approved in accordance with such state prescribed procedure, would be invalid. However, if such conveyance covered inherited tribal lands of the full-blood Indian heirs upon which such heir resided, and to which a state homestead character had attached and then existed, it would be essential for the spouse of the full-blood Indian heir to join therein in order that said conveyance should be valid, although approved in accordance with such authorization by act of Congress.

In cases of inherited tribal lands of an Indian minor under existing law, as a preliminary condition to approval by the county court or the Secretary of the Interior, acting as a federal agency, conveyance must first be executed in the manner and by the parties as required by the state or local law. In case such inherited tribal or allotted land constitutes the family homestead, the conveyance must first comply with the requirements of the state or local law as a matter preliminary to the approval by the federal agency.

In the case at bar, neither was this requirement met, nor does the original lease of May 14, 1904, contain any stipulation, either expressly or implied, binding the lessor to any future extension or modification, nor did any such rule of the Interior Department in force at that time

so provide. The conclusion naturally follows that the modification, renewal, or extension of March 9, 1914, which was not joined in by the allottee's wife as required by the Constitution and statutes of the state of Oklahoma, was void. And this applies, not only to the restricted, but also to the unrestricted, part of said land to which the state homestead status had attached.

[5] 2. The allottee, Webster Chisholm, from and after March 9, 1914, the date of the supplemental agreement entered into by him, collected the oil royalty on the basis of one-eighth, instead of one-tenth, as provided in the original lease. The record discloses that the first six wells were drilled and completed on said 80-acre tract prior to March 9, 1914, that the seventh well was completed on May 20, 1916, the eighth on April 28, 1916, the ninth on July 26, 1916, the tenth on April 26, 1917, and the eleventh on October 18, 1917. I find from the record that the wife, Pearl Chisholm, had no knowledge of the supplemental agreement or stipulation entered into by her husband, Webster Chisholm, on March 9, 1914, until after May 14, 1919; that soon after such fact was ascertained by her, to wit, on August 4, 1919, this action was commenced. In the record it is stipulated that 7,750 barrels in oil was the gross production from said lease from May 14, 1914, the date of the expiration of the original lease, to December 31, 1920, and that the market value of such production was $22,944.40; that Webster Chisholm, one of the plaintiffs, has received pay for 968.76 barrels at the said market value in the sum of $2,868.05.

Under the facts disclosed in the record, the wife, Pearl Chisholm, is not estopped from asserting her homestead rights. Cumps v. Kiyo, 104 Wis. 656, 80 N. W. 937; Thompson v. Millikin, 102 Kan. 717, 172 Pac. 534; Franklin Land Co. v. Wea Gas, Coal & Oil Co., 43 Kan. 518, 23 Pac. 630; Peterson v. Skidmore (Kan.) 195 Pac. 600; Ergenbright v. Henderson, 72 Kan. 29, 82 Pac. 524; Law v. Butler, 44 Minn. 482, 47 N. W. 53, 9 L. R. A. 856; Cherokee National Bank v. Riley, 56 Okl. 133, 155 Pac. 1140; Kelly v. Mosby, 34 Okl. 218, 124 Pac. 984; Alton Mercantile Co. v. Spindel, 42 Okl. 210, 140 Pac. 1168.

[6] In an accounting, the defendant should be allowed the difference between the one-eighth and one-tenth royalty paid by it to the allottee, Webster Chisholm, after March 9, 1914. It being further stipulated in the record that the sum of $2,355.81 was expended in completion of said wells after the time the supplemental stipulation was entered into on March 9, 1914, and prior to December 31, 1920, in such accounting this sum should also be allowed the defendant. Muskogee Development Co. v. Green, 22 Okl. 246, 97 Pac. 619.

It will be necessary for an additional hearing as to the facts or a supplemental stipulation as to facts on the accounting before a final decree may be entered.