### IN THE

# SUPREME JUDICIAL COURT,

### IN THE

## COUNTY OF CUMBERLAND.

### ARGUED AT APRIL TERM, 1845.

DANIEL MARSTON *versus* REUBEN HUMPHREY & *al.*

Where a bill in equity prays that the administrator, the widow and the minor children of a person deceased, intestate, may be decreed to release to the plaintiff their interest in the real estate which belonged to such intestate at the time of his decease ; and the administrator and widow have made answers, and proof has been taken, but no guardian, generally, or *ad litem*, has been appointed for the minors ; the bill should be dismissed for want of proper parties, or the proceedings in taking proof be set aside, and the plaintiff left to proceed in making proper parties, and thereafter to perfect his case for a hearing.

Where the father conveys to the son real estate under a parol agreement, that the son should pay the debts of his father, and support his father and mother during their lives ; and years afterwards, he having paid the debts, the son gives to the father a bond wherein it is said, that if the son shall well and truly provide for and support the father and mother during their lives, "then this obligation to be void ; otherwise to remain in full force, and the aforesaid deed to be void ;" the case is not cognizable in equity by this Court as one of trust, either express or implied.

Nor can the Court decree a reconveyance on the ground of enforcing the specific performance of a contract in writing, for no contract for a reconveyance is found.

And even if there were a stipulation in the bond, that the estate, upon breach of the condition, should be reconveyed, still if the grantee in the deed, and obligor in the bond had deceased, after a partial performance, leaving a widow and creditors who had no knowledge of any latent equities, a court of equity might well hesitate, when so great an alteration had taken place,

VOL. XI.          65

in the exercise of the power of decreeing a reconveyance, as it must first appear that it would be strictly equitable to make such decree.

If the plaintiff in equity once had a right to a specific performance of a contract, and had, nevertheless, prosecuted his claim at law for damages for the breach of it to judgment, his claim to a specific performance would no longer remain.

And when the obligor in the bond had deceased, and the estate, in the due administration thereof, had been rendered insolvent, and the obligee had presented his claim for the breach of the condition thereof, and it had been allowed, and the list of allowed claims had been returned to, and allowed by the Judge of Probate, it is tantamount to a judgment at law in his favor, and equally deprives him of the right to a specific performance.

THIS was a bill in equity brought against Reuben Humphrey, as administrator of the estate of William Marston, deceased, Margaret Marston, widow of said deceased, and the five minor children of said William Marston. The administrator and the widow put in answers, and the plaintiff proceeded and took his evidence. The minor children never had any guardian appointed by the Judge of Probate, and none was appointed for them for the present suit. They did not appear.

The facts sufficiently appear in the opinion of the Court.

*Fessenden* and *Deblois* argued for the plaintiff. The principal grounds on which they claimed to support their bill are stated in the opinion of the Court. Deblois, in his opening, cited 7 Johns. R. 557 ; 3 Johns. Ch. R. 367 ; 4 Johns. Ch. R. 302 ; 5 Littel, 77 ; 1 Tenn. R. 79 ; 4 Bibb, 11 ; 4º Hen. & M. 450 ; 1 Desaus. 191 ; 4 Paige, 115 ; 2 J. J. Marsh. 487 ; 1 Gill & J. 272 ; 3 Litt. 444 ; 1 Story's Eq. § 30 ; 1 Cruise, 33, § 5 ; 1 Inst. 202 (a) ; 1 Roll. Abr. 474 ; 22 Pick. 238 ; 2 Story's Eq. 24 ; 14 Pick. 27 ; 12 Pick. 233 ; 16 Mass. R. 221 ; 1 P. Wms. 321 ; 3 Ves. 696 ; 5 Ves. 303 ; 1 Johns. Ch. R. 342 ; 2 Mad. Ch. 128 ; 1 Sch. & L. 135 ; 2 P. Wms. 294 ; 15 Ves. 349 ; 16 Ves. 278 ; 19 Ves. 325.

*Longfellow*, sen'r, argued for the defendants, citing 17 Mass. R. 303 ; 8 Greenl. 320.

The opinion of the Court was drawn up by

WHITMAN C. J. — As the jurisdiction of this Court, in matters of equity, is limited and specific, it is essential that every

bill should aver clearly and explicitly such facts as will bring the case within some one or more of the specifications. In this case the averments are, that, in October, 1828, the plaintiff conveyed in fee all his real estate to William Marston, since deceased, by deed in form absolute and unconditional, purporting to be made for the consideration of one thousand dollars by him paid; that the same was, nevertheless, made without any consideration actually, at the time, received therefor; that the inducement to make the deed was an agreement, verbally made between the plaintiff and said William, that he should support the plaintiff and his wife, who were his parents, during their lives, and pay all the plaintiff's debts; that about six years afterwards, William made a bond to the plaintiff with a condition, in which it is recited, that "on the first day of October, 1828, the said Daniel Marston conveyed to the said William Marston, by deed, all the real estate, that he then possessed;" and then proceeds to say, if the said William Marston shall well and truly provide for and support the plaintiff and his wife during their lives, "then this obligation to be void; otherwise to remain in full force; and the aforesaid deed to be void;" that William has since deceased, and has not performed his contract; that his estate is insolvent, and that William, immediately after taking said conveyance, entered into possession of the premises conveyed, and so continued until his death, in 1840, when he left a widow, and five minor children. The prayer of the bill is, that the wife and children may be decreed to release their interest in the estate so conveyed to William; and that the deed made to him may be cancelled; or that the said wife and children, and the administrator, may be decreed to make suitable provision for the support of the plaintiff and his wife during their lives.

The widow of William, and the administrator of his estate, are the only parties defendant before us; and they have filed their answers, admitting that the estate had been conveyed, as set forth in the bill, and the entry and possession under the conveyance, by William till his decease; and averring that he paid the debts due from said Daniel, amounting to about nine

hundred dollars. To these answers a replication has been filed; and the cause has, thereupon, proceeded to proof, without the appointment of any guardian, *ad litem*, for the minor children; so that their interests have not been represented.

It is very clear, that this course of proceeding was irregular. The rights of minors in a court of equity are not to be disregarded. Upon motion the Court would have appointed some one as guardian, who would have looked to their interests; and no proceeding to take proof should have been resorted to, till he had become a party before the Court. It is true, that even then, a decree could not be made against the interests of his wards, that would be absolutely conclusive upon them. But it is to be presumed that the guardian would so represent their interests, as that the Court would be enabled to make a decree in reference to them, which would not be disturbed when they became of age. A reasonable time thereafter would, nevertheless, be allowed them to question its justice. In the present state of the case it would be regular, either to dismiss the plaintiff's bill for the want of proper parties; or to set aside the proceedings in taking proof, and leave the plaintiff to proceed in making proper parties, and thereafter to perfect his case for a hearing.

But there appearing to the Court to be some reason to doubt if the plaintiff, upon proceeding *de novo*, could present a case entitling him to the relief prayed for, we have fully heard the arguments of his counsel in reference thereto; and the result in our minds is, that the bill must be definitively dismissed. The objections to its maintenance, even with proper parties, are insurmountable. The bill itself does not state a case clearly within any of the specifications of equity powers delegated to this Court.

The conveyance set forth to William was not in trust, either express or implied; not implied, because, as the bill states, the conveyance was made upon a stipulation, that, in consideration of it, William should pay the plaintiff's debts, and support the plaintiff and his wife during their lives, which, it is evident, had been partially performed. At the time the bond was ex-

ecuted it must be presumed the plaintiff's debts had been paid by William, as six years had then elapsed after the making of the conveyance, and as the payment of debts forms no part of the condition of the bond ; and, not only so, but until that time, the plaintiff must have been satisfied with the performance of that part of the agreement, also, relating to the support of himself and wife, as otherwise some reservation or stipulation would then have been made concerning it. The case, then, is not cognizable by us as one of trust.

The counsel for the plaintiff places his claim to our interference upon the ground, that we have power to enforce the specific performance of contracts in writing; and considers the bond as forming a contract for a reconveyance of the estate upon a failure, which is alleged to have taken place, in the performance of the condition ; or that we have power to decree, that provision shall be made for the support of the plaintiff and his wife during their lives. But there are many obstacles presented in the case to the exercise of such a power in either of the proposed modes. Whether specific performance of a contract shall be decreed depends upon the circumstances of each particular case. Story on Eq. § 742. It must appear that it would be strictly equitable to make such a decree. "If the character and condition of the property, to which the contract is attached, have been so altered, that the terms and restrictions of it are no longer applicable to the state of things," equity will not interfere. Ib. § 753. The refusal of a court of equity to interfere works no injury. The right to proceed at law will be thereby unaffected. And where a decree for specific performance must be refused, even by courts having general equity powers, there are few, if any cases, in which it would be proper to decree damages for non-performance. Ib. § 797, 798 and 799. This Court can hardly be considered as clothed with any such power. It is nowhere given in express terms ; and we must be very cautious in assuming equity powers by inference.

The bond, supposed to contain an agreement for a reconveyance, is not in terms to that effect. The stipulation in it is

merely that a conveyance, long before made, operating a complete and absolute transfer of title, should be void. There is not a word of stipulation for a reconveyance of the estate. It is merely said, that the deed shall be void. By this stipulation, upon non-performance, the deed either becomes void, or it does not. If it becomes void, there is no ground for a court of equity to interfere. The estate upon reentry would revest in the grantor; and so the remedy would be complete at law. If the stipulation has no such effect, then it is merely nugatory. In either case to decree a reconveyance would be unauthorized by any stipulation contained in the bond. It would not be an enforcement of an agreement made by the parties.

But if there were a stipulation in the bond, that the estate, upon breach of the condition, should be reconveyed, a court of equity might well hesitate in the exercise of its power, under the circumstances disclosed in this case. While the estate in fee was absolute in William, it would seem that he intermarried with the defendant, now his widow. She then acquired a right to be endowed thereof upon his decease. No court of equity could disregard such a right. She had no knowledge, we must presume, for there is no evidence tending to show that she had, of any latent equities, if any there were, connected with the estate in favor of the plaintiff. Such latent equities would operate as a fraud upon her, if they could be so enforced as to deprive her of a right, which every appearance indicated to her, that she acquired on her intermarriage with the deceased.

Again, it is scarcely to be questioned, that the deceased, after receiving the conveyance, in pursuance of the understanding between him and the plaintiff, paid debts, due from the plaintiff, to a considerable amount, and in part consideration for the conveyance. This would, certainly, create an equitable lien upon the estate; and a reconveyance of it could not be decreed till there could be an adjustment of the amount so paid.

Again; the rights of the creditors of the deceased are to be considered. The plaintiff placed in the hands of the deceas-

ed the estate in question, with the semblance at least of an absolute ownership therein. Relying upon that, as we may well presume, they gave him credit, insomuch that his estate upon his decease was ascertained to be insolvent. They could not have been apprised, so far as appears, of any equitable claim that the plaintiff might pretend to have in the estate. It would operate now as a fraud upon them if the title in the deceased were now to be annulled. A court of equity could not aid in any such procedure.

Another obstacle, of not less magnitude, the right of the plaintiff to the relief sought for, is to be found in the exhibits introduced by the defendants, which show that the plaintiff must be regarded as having sought his remedy at law upon his bond. It appears that he has, in pursuance of the provisions of law, preferred his claim, under that instrument, to the commissioners appointed to examine the claims against the estate of the deceased, which has been represented as insolvent; and that they have allowed him, for the breaches of the condition therein, a sum much beyond the penal sum of the bond; and much beyond the value of the estate in question; and that this, among the list of claims allowed, has been, without objection, returned to and accepted by the Judge of Probate. This is tantamount to a judgment at law in his favor for the amount. It is so treated in reference to the liability of the administrator for the dividend thereafter to be declared. If the plaintiff had a right to the specific performance of a contract, and had, nevertheless, prosecuted his claim at law for damages for the breach of it to judgment, it would be unprecedented, still to allow him to succeed in a claim in equity for a specific performance.

*Bill dismissed.*