## McFARLAND v. COYLE.

No. 8845—Opinion Filed April 9, 1918.

(172 Pac. 67.)

### 1. Homestead—Intention to Occupy.

"A purchase of a homestead within the statutory limits as to quantity and value, with the intention in good faith of presently residing on it or residing thereon as soon as some temporary obstacle to such residence can be removed, or some neces-

sary preparation for the same can be made, is equivalent to actual occupancy of the residence, and said property is exempt from lien, levy or forced sale." 61 Okla. 43, 160 Pac. 56.

2. Same—Evidence.

Where the claimant testified that he purchased certain lands for the purpose and with the intent of making the same the home of himself and family; that he did not immediately assume occupancy of the premises for the reason that there was a tenant in possession of said premises under an unexpired lease from the claimant's grantor, and that he desired to retain his children in school in the town where he resided for the remainder of the term, and the house on the premises was not large enough to accommodate his family; that he consulted another as to the cost of building a dwelling suitable for the accommodation of his family, and a lumberman as to the cost of lumber necessary for the construction of such building, expressing his intention to the said lumberman and to the said third person of making said premises his home, both of whom corroborate his testimony as to considering the cost of the dwelling and the cost of the lumber, and as to his expressing his intention of making the premises his home, and further testified that he did not own any other lands or homestead, and that he intended moving on said premises as soon as these obstacles were removed, and he could build a dwelling thereon suitable for his family; that he had a fixed intention of making said premises his homestead and never had abandoned such intention, and had made some improvement thereon—it is held, that such facts and circumstances are sufficient to impress the lands with the homestead character.

(Syllabus by Pryor, C.)

Error from District Court, Grady County; Will Linn, Judge.

Action by Lida McFarland against Ed. Coyle, with motion by defendant to quash a levy of execution. From a judgment sustaining the motion and quashing the levy of execution, plaintiff brings error. Affirmed.

Welborne & Bailey, for plaintiff in error.

Riddle & Hammerly, for defendant in error.

Opinion by PRYOR, C. This is an appeal of the plaintiff in error, Lida McFarland, from a judgment of the district court of Grady county, quashing levy of an execution. The plaintiff in error, Lida McFarland, obtained a judgment in the district court of Grady county in the sum of $3,960, against Ed. Coyle, defendant in error, et al. On the 8th day of February, 1916, the plaintiff in error caused execution to be issued in said cause, and on the 9th day of February, 1916, the sheriff of Grady county levied the same on the northwest quarter of section 5, township 3 north, range 8, west, in said county. On the 2d day of March, 1916, defendant, Coyle, filed his application and motion to quash levy of execution on the above-described lands, on the ground that the same were his homestead. The plaintiff, Lida McFarland, filed answer to said motion, denying that said lands were the defendant, Coyle's, homestead. On hearing of said motion the trial court rendered judgment sustaining the motion and quashing the levy of execution. From this judgment the plaintiff in error appeals.

The only question involved on appeal is whether or not the lands levied on were the homestead of the defendant, Coyle, at the time of the levy of the execution on said lands by the sheriff.

The evidence of the movant, Ed. Coyle, offered for the purpose of proving that said lands were his homestead at the time of the issuance and levy of the execution, reasonably establish the following facts and circumstances: That the defendant, Coyle, lived in the town of Rush Springs, Okla., and had lived in the state of Oklahoma since statehood; that he was the head of a family, consisting of his wife and six children between the ages of 11 and 18 years; that during the month of October, 1915, Coyle purchased the lands in question for the purpose and with the intent of moving thereon and making the same his homestead; that at the time of such purchase there was a tenant of his grantor in possession of the premises under lease which expired the 1st day of January, 1916; that the defendant, Coyle, intended to move on said premises as soon as he could secure possession; that during December, 1915, he refused to lease said premises, expressing at the time that it was his purpose to move on said premises himself with his family and make the same his home, but later he decided to remain in Rush Springs until May, 1916, for the reason that two of his children would graduate from the schools of said town on that date, and he decided to wait until they had graduated before moving to the farm; that he had a conversation with a Mr. Kerns about the cost of building a house on the lands in controversy, which would be large enough for a home for himself and family, comparing the cost of Mr. Kerns' house with the cost

of the one he contemplated building, and expressed to Mr. Kerns at that time his intention of making the lands in controversy his home; that he consulted A. L. Evans, a lumberman, as to the cost of the lumber necessary to construct a house of the character he contemplated building and expressed to him his intention of making his home on the premises in question; that he (the defendant, Coyle), built himself, at his own expense, some fences which partially inclose the premises and ordered fruit trees put out on said land; all of the foregoing occurring before the issuance and levy of execution; that he (the defendant, Coyle), had a fixed intention to make said premises his home from the time of the purchase thereof and had never abandoned the same. The statements of defendant, Coyle, and his testimony regarding his expressing an intention to make the lands in controversy his home, and his conversation regarding the cost of building on said premises and as to the cost of lumber for said purpose, are corroborated by Mr. Kerns and Mr. A. L. Evans.

The facts show that there was a small house on the premises, but it was not large enough to accommodate a family of the size of Mr. Coyle's; further, the facts show that Coyle leased the premises to two tenants, Mr. Carrod and Mr. Ridley, for the year 1916, reserving, however, the meadow land; that Coyle's boys did some work on said premises during the year 1916. The facts further show that Coyle owned no other home or lands.

The correctness of the judgment of the trial court depends on whether these facts are sufficient to constitute said premises, the defendant's homestead. In the case of Illinois Life Ins. Co. v. Rogers et al., 61 Okla. 43, 160 Pac. 56, this court held:

"A purchase of a homestead within the statutory limits as to quantity and value, with the intention in good faith of presently residing on it or residing thereon as soon as some temporary obstacle to such residence can be removed, or some necessary preparation for the same can be made, is equivalent to actual occupancy of the residence, and said property is exempt from lien, levy, or forced sale."

This rule was reaffirmed in the case of American Surety Co. v. Gibson, 65 Okla. 206, 166 Pac. 112, wherein it was held:

"A married man who owned a farm in Caddo county, and who had lived with his family thereon for about 10 years, traded this farm for one located in Canadian county, intending to remove his family thereon and to make the same their home. This Canadian county farm was rented at the time of the trade, and the tenant was occupying the one residence thereon, and for that reason he could not immediately establish the family in the new home. He rented a furnished house in El Reno for one month, and moved his family there, and was intending to go to Cushing for temporary employment, but before he got away, and about 10 days after his arrival at El Reno, he was sued upon an unsecured debt, and an attachment was issued and levied upon the farm; he moved to discharge the attachment on the ground that the farm was his homestead. * * * Held, that his motion was well taken, and was properly sustained."

In the case of Illinois Life Insurance Co. v. Rogers, supra, the court adopts with approval the following language of the Court of Civil Appeals of Texas, in the case of Foley v. Holtkamp, 28 Tex. Civ. App. 123, 66 S. W. 891:

"A homestead may be created by intention prior to actual occupancy when it appears that the owner is entitled to the exemption as the head of a family, and that this intention has been manifested by such acts as amount to reasonably sufficient notice of that intention; the purpose of the law being to require such open evidence of this intention as will prevent the use of this right as a shield for fraud. * * * In Cameron v. Gebhard, 85 Tex. 610, 22 S. W. 1033, 34 Am. St. Rep. 832, it is said; 'The intention thus to appropriate the property shall not only be found in the mind of the party, but should be evidenced by some unmistakable acts, showing an intention to carry out such design, or some sufficient reason should be given why this intention was not demonstrated by such acts.' In the same case this general rule is announced: 'From these decisions it is apparent that intention is almost the only thing that may not be dispensed with in some state of case, and it follows that this intention in good faith to occupy is the prime factor in securing the exemption. Preparation * * * is but the corroborating witness to the declaration of intention, the safeguard against fraud, and an assurance of the bona fides of the declared intention of the party.' Justice Brown in the same opinion says further: 'But the placing upon the premises unhewn logs, for the purpose of erecting thereon the humblest cabin, with a bona fide intention to occupy as soon as the cabin can be built, secures the right.' Questions of this sort most frequently arise where the claimant has bought unimproved property for the purpose of a home. In such case the declared purpose for which the property was bought is necessarily a potent factor in establishing the exemption. But we can perceive no difference in principle between such a case and this. Here, while it is true the vacant property was acquired years before this controversy arose and at

a time when appellee, being unmarried, was not entitled to the exemption, yet after all it is not the purchase for the purpose which secures the exemption, but the intention formed at a time when the party has a right to the exemption, and evidenced by the requisite acts. The absence of these acts of preparation or a failure to promptly follow them by occupancy and use may be accounted for, and in measuring the reasonableness of the excuse all the circumstances may be looked to by the jury. The presence of legal obstacles forbidding occupancy or further preparation has been held to excuse these otherwise requisite acts and permits bona fide intention coupled with declarations to secure the right."

The rule requiring that the mere intention must be accompanied by other acts indicative of the intention, seems to be well established. Thus it will be seen from the foregoing that the intention of the homestead claimant is the prime factor in determining whether or not a certain land is impressed with the homestead character. The acts required to accompany this intention are not acts essential to the creation of a homestead, but are acts indicative of such intention. The purpose of such acts is primarily to corroborate his declaration that such intention existed in his mind. To establish this intention the mere statement under oath of claimant that such intention existed in his mind is not sufficient, but his statement must be corroborated by that of external facts or circumstances.

The facts and circumstances above set forth sufficiently corroborate his statement that it was his intention to make said lands his homestead, and such facts and circumstances sufficiently satisfy the ruling requiring facts and circumstances to be shown indicative of his intention. All of the facts and circumstances taken together sufficiently and reasonably sustain the holding of the trial court that said lands were the homestead of the defendant Coyle.

Therefore the judgment of the trial court should be affirmed.

By the Court: It is so ordered.