STORM, Adm'r, et al. v. GARNETT et al.

No. 13594—Opinion Filed June 10, 1924.

1. Election of Remedies—Effect.

The general rule is that when the law gives several means of redress or kinds of

relief, predicated on conflicting thories the election of one of them operates as a bar to the subsequent adoption of the others; and where a party has two inconsistent remedies, and elects one and pursues it to judgment, with full knowledge of the facts, such election constitutes a bar to pursuing an alternative remedy. First Trust & Savings Bank v. Bloodworth et al., 70 Okla. 317, 174 Pac. 545.

**2. Contracts—Election of Remedies for Breach—Damages or Specific Performance.**

On breach of a contract the injured party has his choice of remedies. He may sue on the contract for the damages he has sustained by reason of the breach; or he may have recourse to equity to compel a specific performance of the contract; but where a party brings an action at law for damages for the breach, he cannot thereafter maintain a suit in equity to enforce specific performance.

**3. Judgment—Res Judicata—Damages for Breach of Contract—Recovery as a Bar.**

Where a party brings an action for damages for breach of a contract, and makes recovery of damages, which judgment is paid off and the judgment satisfied, it matters not whether all the elements of damages for the breach are included in the litigation, the litigation and recovery constitute a bar not only as to all matters included, but also as to all matters which could have been included as elements of damages for the breach. The recovery made satisfies the claim for all elements of damages included and all elements of damages which might have been included in the suit.

**4. Deeds—Effect of General Warranty—Outstanding Claims and Judgments.**

A general warranty deed has the effect of warranting against claims and judgments outstanding against the grantor; and is not a warranty against claims and judgments outstanding against the grantee.

**5. Homestead—When Homestead Character Impressed Without Occupancy.**

The homestead character may be impressed upon a tract of land without actual occupancy, provided the claimant has a fixed intention to make a home thereon, and such intention is evidenced by overt acts of preparation in the erection of permanent improvements and in preparation of the land for a home. The actual occupancy of the land, or an attempt in good faith to do so, must follow the overt acts of preparation without unnecessary delay. Davis et ux. v. First State Bank, 65 Okla. 211, 166 Pac. 92; Sharp et al. v. Wright 88 Okla. 16, 211 Pac. 70.

**6. Judgment—Lien—Priority Over Subsequent Mortgage.**

Valid, binding, subsisting judgments, outstanding against the grantee of real property located in the county where the judgments were obtained, are prior liens upon such real estate to mortgages subsequently executed by the grantee.

(Syllabus by Shackelford, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, Oklahoma County; C. C. Smith, Assigned Judge.

Action by Mattie R. McHan against Chas. H. Garnett, Arthur C. Hobble and E. L. Garnett, to cancel and set aside certain judgments as a cloud upon the title to certain real property owned by the plaintiff. During the course of the litigation plaintiff died and the cause was revived in the name of Geo. E. Storm, administrator; and M. T. Swisher, Geo. E. Swisher, and G. A. Paul were made parties. Judgment for Chas. H. Garnett, Arthur C. Hobble, and E. L. Garnett against Geo. E. Storm, administrator, M. T. Swisher, Geo. E. Swisher, and G. A. Paul. Geo. E. Storm, administrator. M. T. Swisher, Geo. E. Swisher, and G. A. Paul prosecute appeal. Affirmed.

The facts out of which this case grew are, roughly, as follows: A certain tract of land near what is now the fair grounds in Oklahoma City was owned by John and Katie Fiedler as tenants in common; and on April 2, 1906, they executed a mortgage to Williams and Hogan on the land described in it, in the sum of $730, the land consisting of 20 acres subject to right of way of Rock Island and Katy railroads amounting to about three acres. These parties were the parents of four minor children, and soon after the said mortgage was executed Katie Fiedler died, leaving her husband and minor children as her sole heirs. The minor children took from their mother two-thirds of the mother's one-half or what would amount to an undivided one-third of the tract, but all of it was subject to the Williams and Hogan mortgage. Sometime after the death of Katie Fiedler, John Fiedler and the plaintiff were married and went to live on the 20 acre tract of land which is referred to by the parties in this lawsuit as the fair grounds property. Soon after John Fiedler and plaintiff were married they deeded one acre in the northeast corner of the tract to Geo. E. Storm. In 1908 Chas. H. Garnett loaned John Fiedler and his wife (the plaintiff here) a sum of money and took a mortgage from them to secure the loan. This loan was never paid and the debt was converted into a judgment on about June 1, 1910. This judgment is identified as the judgment taken in case No. 717 in the superior court, and has never been satisfied, but it seems that it has not been

permitted to become dormant. This judgment is also referred to as the judgment in the case of Garnett v. Storm, and it was assigned by Chas. H. Garnett to Fred S. Caldwell and by him assigned to E. L. Garnett, one of the parties here. The judgment amounts to $545.55.

In June, 1909, a foreclosure suit was filed on the Williams and Hogan mortgage, and later in the year Mrs. Fiedler, who appears here as Mrs. McHan, bought this mortgage and had it assigned to her, and the foreclosure suit seems to have been dismissed. In March, 1911, Mrs. Fiedler commenced a divorce suit against John Fiedler and was granted a divorce, and awarded the interest held by him in the portion of the land lying south of the railroad tracks, said to be about five acres, unimproved and subject to overflow. Prior to the divorce suit Fiedler seems to have deeded about five acres of the tract in the northwest corner with the improvements to his wife. No mention was made of this deed in the divorce case, and afterwards the court modified the decree by making an order cancelling this deed, and his wife, appearing here as Mrs. McHan, appealed the cause and it was reversed and finally disposed of in the trial court by Mrs. Fiedler being divorced and restored to her former name of Mrs. Storm. In 1911 the former Mrs. Fiedler, as Mrs. Storm, went to Chas. H. Garnett, one of the parties here, and wanted to make a contract with him to clear up her title to a portion of the fair grounds tract of land, and to relieve herself of the burden of foreclosing the Williams and Hogan mortgage, of which she had become the owner by purchase. A contract was prepared between herself and Chas H. Garnett, which Mrs. Storm seems to have submitted to Everest & Campbell, attorneys of Oklahoma City, and upon their approval of the contract it was signed by the parties, Mrs. Storm and Chas. H. Garnett. The contract is as follows:

"This agreement made and entered into this 5th day of July, 1911, between Chas. H. Garnett, first party, and Mattie R. Storm, formerly Mattie R. Fielder, second party, witnesseth:

"That for and in consideration of the assignment to Arthur C. Hobble by the second party of a mortgage dated the 2nd day of April, 1906, and note secured thereby, both executed by John Fiedler and Katy Fiedler, husband and wife, for the sum of $730.00 and of the present value of $998.-85. and now owned by the second party, and for the consideration of a quitclaim deed conveying to Robert E. Garnett all of the interest of the second party in and to the east half of the northeast quarter of the southeast quarter of section thirty-five

(35) in township twelve (12) north, range three (3) west of the Indian Meridian, in the county and state of Oklahoma, the first party hereby covenants and agrees with the second party that he will cause the said mortgage above described to be foreclosed and the property covered thereby to be sold as soon as same can be done, and as soon as the sale of the said property is made, he will, by title to be acquired at said sale, convey or cause to be conveyed to the second party by good and sufficient deed of conveyance, free and clear of all liens, charges and encumbrances of every kind and character, the following described real estate situated in Oklahoma county in the state of Oklahoma, to wit:

"Beginning at a point 20 rods west of the northwest corner of the southeast quarter of section 35 in township 12 north range 3 west of the Indian Meridian running thence south to the railroad; thence west 20 rods to the east line of Mrs. Page's property, north along the east line of Mrs. Page's property to the north line of said quarter section; thence east along the north line of said quarter section to the place of beginning; containing five (5) acres, more or less.

"And the first party also agrees to convey and quitclaim to George E. Storm, at same time the conveyance above provided for is made to the second party, all the interest which he shall acquire and shall then have in and to the following described real estate, to wit:

"A tract of about one acre in the northeast corner of the southeast quarter of section 35 above described herein according to the description of the said tract in the deed conveying the same to the said George E. Storm by John Fiedler and Mattie R. Fiedler.

"And the first party further agrees to pay the second party $100.00 cash in hand upon the execution of this contract, the receipt of which is hereby acknowledged by the second party, and to give his two notes of this date payable to the second party, one for $200 due January 1st, 1912, and the other for $198.85 due April 1st. 1912, and both with interest at the rate of 10% per annum.

"The second party agrees that the agreements of the first party above set forth herein, the payment of the said sum of $100 to her and the execution and delivery of the said notes of the first party are the full consideration to her for the sale and assignment by her of the said note and mortgage to the said Arthur C. Hobble, and for the execution and delivery by her of the said deed to the said Robert E. Garnett.

"In witness whereof we have hereunder set our hands to this assignment in duplicate the date above given."

Mrs. Storm performed her part of the contract by making assignment of the Williams and Hogan mortgage to Arthur C. Hobble and by making a quitclaim deed to the property described in the contract to Robert E. Garnett conveying to him all right, title and interest she held in the fair grounds property. It seems that Chas. H. Garnett paid the $100 required to be paid by him, executed his notes as provided in the contract and afterwards paid the $200 note. It seems that in addition to the cash paid to Mrs. Storm by Garnett. the benefit she was to derive by the contract was five a''res, more or less, of the fair grounds tract of land. free and clear of all incumbrances; and Geo. E. Storm. her son, was to have his acre of land. For the purpose of guaranteeing performance of the executory part of the contract on the part of Chas. H. Garacres, more or less, of the fair ground tract on a tract of land comprising 26 acres which the parties refer to as the Delmar Garden property, fixing the amount of her security for the performance of the contract at $10,000. This tract of land was located near Packingtown. in Oklahoma City. After the contract made between Chas. H. Garnett and Mrs. Storm (Mrs.) McHan) Mr. Garnett commenced proceedings to foreclose the Williams and Hogan mortgages. Mrs. Storm herself had guaranteed payment of the mortgage and was made a party defendant, and filed an answer admitting her liability on her assignment. John Fiedler himself appeared and made defense against the mortgage, that he had paid a large part of the mortgage debt while the mortgage was owned by Mrs. Storm. The matter was long delayed because of conditions arising over which, it seems, Chas. H. Garnett had no control; and Mrs. Storm grew impatient about the matter, and in June, 1913, sent a registered letter discharging Chas. H. Garnett as her attorney; but afterwards agreed that he should represent her in certain pending litigation which included the case of Hobble v. Storm, which was the foreclosure case. The case finally, on November 1, 1916, resulted in the foreclosure of the mortgage and a personal judgment against Mrs. Storm on her indorsement of the note. in the sum of $1,479.13. The sale of the property was had under the foreclosure judgment, and at the sale the property was bid off at $100, the sale confirmed, the money paid and credited on the judgment, leaving a balance of $1,379.13, for which Mrs. Storm was personally liable. Thus, there were two judgments outstanding against Mrs. Storm. The first obtained was in the case of Chas. H. Garnett v. Fiedler and others, amounting to $545.55, and by assignment belonged to E. L. Garnett; and

the second was in the case of Hobble v. Storm and others. and, as above stated, amounted to $1,379.13. However, before the last judgment had been taken Mrs. Storm, having become impatient at the delays occasioned, apparently, without the fault of either herself or Chas. H. Garnett, decided that she would wait no longer for the performance of the contract made between herself and Chas. H. Garnett; and having decided that the contract had been breached, elected to rely upon the breach and brought suit against Chas. H. Garnett and another to foreclose the $10,000 mortgage given her by Garnett as a guarantee that he would faithfully perform the executory conditions of the contract made between them; her suit against Garnett being in the nature of a suit for damages for the failure to perform the contract. The case resulted in a judgment in favor of Mrs. Storm in the sum of $9 000 for her damages against Chas. H. Garnett for the breach of the contract. An appeal was prosecuted to the Supreme Court and there the judgment was affirmed. The affirmance of this judgment was had on February 20, 1917, and the case is reported as Garnett et al. v. Storm et al., 64 Okla. 137, 166 Pac. 401. On about the 16th of February. 1918, an agreement was reached between Mrs. Storm and Chas. H. Garnett, by which she agreed to satisfy the judgment in Garnett v. Storm upon payment to her of the sum of $300 cash, and delivery to her of a deed to the Delmar Garden property. The cash was paid, the deed to the Delmar Garden 26 acre tract was delivered and possession of the property turned over to Mrs. Storm, who at that time was the wife of McHan. and was going by the name of Mattie R. McHan, as she appears here. At the time she accepted the cash and the Delmar Garden property in satisfaction of her judgment for damages against Chas. H. Garnett, it seems that nothing was said about the judgments in the case of Garnett v. Storm or in Hobble v. Storm, but they both were in existence, the first belonging to E. L. Garnett and the second to Arthur C. Hobble. Later, it seems that some attempt was made or threatened or expected to be made to subject the Delmar Garden property to the payment of the two outstanding judgments. and this action was commenced by Mattie R. McHan, formerly Mrs. Storm.

This action was commenced in the district court of Oklahoma county on the 12th of May, 1920, by Mattie R. McHan against Chas. H. Garnett, Arthur H. Hobble, and E. L. Garnett. and the purpose of her action was to quiet title to the Delmar Garden property against the two outstanding judgments—the judgment in the case of Garnett

v. Storm, owned by E. L. Garnett, and the judgment in Hobble v. Storm. The property, the title to which is sought to be quieted in Mrs. McHan, is described as lot 11 in section 5, township 11 north, range 3 west of the Indian Meridian, subject to suburban railroad right of way, and containing about 26 acres, in Oklahoma county, Okla.

The claim made by Mrs. McHan is, in effect, that she got the Delmar Garden property, the property above described, in lieu of about six acres of the fair grounds property, which, according to the contract made between her and Chas. H. Garnett, she was to have free and clear of all liens and encumbrances; and attaches a copy of the Garnett-Storm contract to her petition and makes it a part thereof; and seeks the enforcement of the contract to the extent that the plaintiff have the Delmar Garden property free and clear of liens and encumbrances, just as she was to have a portion of the fair grounds property free and clear of liens and encumbrances under the contract. For further cause of action she claims that the Delmar Garden property is the homestead of her and her family, and is not subject to forced sale in satisfaction of judgment liens. That the defendants are claiming a lien upon the Delmar Garden property by reason of the said two judgments and are threatening to subject the said property to the payment of the said judgments; and the claim of the defendants under the said two judgments constitutes a cloud upon her title and the same should be removed.

The defendants answered admitting the execution of the Garnett-Storm contract in which the fair grounds tract of land was involved, but allege that Mrs. Storm, Mrs. McHan here, elected to abandon the contract and treat it as breached, and brought an action against Chas. H. Garnett for damages for the breach, and for foreclosure of the indemnifying mortgage made by him; and made a recovery of judgment in such action against him for her damages arising because of the breach of the contract, and her damage was fixed at $9,000 which the defendant Chas. H. Garnett paid, and the judgment was satisfied by her; and that the plaintiff, having abandoned the contract and declared a breach thereof, and having brought suit for damages, and the same having been fixed and judgment entered and paid, cannot rely upon the contract, and plead the judgment satisfaction thereof as a bar to this action; and denies the claim of homestead rights. The defendant Arthur C. Hobble filed a cross-petition making G. A. Paul, Geo. E. Swisher, and M. T. Swisher and the plaintiff, Mattie R. McHan, parties

defendant to such cross-petition. For his cause of action on his cross-petition he alleges that subsequent to Mrs. McHan becoming the owner of the Delmar Garden property she made two mortgages to the said G. A. Paul, Geo. E. Swisher, and M. T. Swisher covering the said property to secure the payment of sums aggregating $2,525, and alleges that such mortgages are inferior to his judgment lien; and seeks to enjoin them from interfering with the enforcement of his prior lien. The defendant E. L. Garnett filed a separate cross-petition to like effect. The defendants named in the separate cross-petitions, filed answers denying the allegations of the cross-petitions, and asked that the mortgages held by them be declared to be prior liens on the Delmar Garden property. Mattie R. McHan replied to the answers of the defendants by general denial. During the pendency of the litigation Mattie R. McHan died and the cause was revived in the name of Geo. E. Storm, administrator of her estate.

The case was called for trial on the 26th of January, 1922, and a jury being waived by the parties, the case was submitted to the Honorable C. C. Smith, district judge of the 11th district of Oklahoma, on special assignment to the Oklahoma county district court. At the close of the evidence judgment was entered for the defendants Chas. H. Garnett, E. L. Garnett, and Arthur C. Hobble. The plaintiff Geo. E. Storm, as administrator, and defendants to the cross-petitions filed motion for a new trial, which was overruled, and Geo. E. Storm, administrator, G. A. Paul, Geo. E. Swisher, and M. T. Swisher prosecute appeal as plaintiffs in error against Chas E. Garnett, E. L. Garnett, and Arthur C. Hobble.

G. A. Paul and Geo. E. Swisher, for plaintiffs in error.

Chas. H. Garnett, for defendants in error.

Opinion by SHACKELFORD, C. Many assignments of error are made and argued in the brief of plaintiffs in error. In the trial of the cause there was little or no dispute in the evidence. Much of the evidence was matters of record in the Oklahoma county district court. The dispute arising between the parties was not as to what was proven, but what legal significance and effect should be given to what was proven and the instruments and records introduced upon the trial. As we see this case, there are three questions presented which require consideration for the purpose of properly disposing of this appeal. As we see them they are:

(1) Was Mrs. McHan entitled to have

the contract made between her and Chas. H. Garnett enforced to the extent of freeing her Delmar Garden property of the liens of the judgments in Garnett v. Storm and Hobble v. Storm, when she had elected to abandon the contract and sue for her damages for the alleged breach thereof and recovered damages?

(2) Did the Delmar Garden property become the homestead of Mrs. McHan and her family so as to free it of judgment liens?

(3) Which liens shall have the priority, the judgments outstanding against Mrs. McHan at the time she acquired the Delmar Garden property, or the mortgages she placed thereon after she acquired ownership of the said property?

If the first question should be answered in the affirmative, then it will be unnecessary to answer two and three; if the first is answered in the negative, at least the second must be answered, and if the answer there is in the affirmative, we are not concerned about the third; but if the first and second are answered negatively, then it will become necessary to determine the priority of the liens.

1. When Chas. H. Garnett and Mrs. Storm, Mrs. McHan here, entered into the contract dated July 5, 1911, it seems to have been done in good faith by both parties. Mrs. Storm executed her part of it, and aside from the payment of a small sum of money, the contract was executory on the part of Garnett. The matter required to be done by Garnett was dragged out longer than either of the parties apparently had anticipated and so far as we are able to see was the fault of neither of them. However that may be, Mrs. Storm grew tired of waiting for performance. It seems that at that time she had three courses open to her to pursue. First, she might have left the matter to Mr. Garnett to work out, and it seems that it could have been and would have been worked out for her had she given Garnett time enough; and she would have become the owner of that part of the fair grounds property free and clear, as described in the contract; or, second, she might have brought an action for specific performance of the contract, and have secured the same relief as she might have gotten by waiting on Garnett to work the matters out; that is, she would have secured that portion of the fair grounds property described in the contract, free and clear of liens and encumbrances; or, third, she could elect to declare the contract breached and bring suit against Garnett for damages accruing to her because of the breach. The second or third courses involved bringing action for relief; and it is certain that

she was not entitled to maintain an action for specific performance, and have that relief, and also treat the contract as breached and have damages for the breach. She had a right to maintain one action upon the contract; and it was for her to say or elect which action she would prosecute. If she prosecuted her cause for specific performance she would not be entitled to damages for the breach. If she sued Garnett for her damages for his failure to perform, she would not be entitled to specific performance of the contract. If she sued for damages she must necessarily abandon any idea of having the contract performed on the part of Garnett. She was careful enough in making the contract to have Garnett give her a security for the performance of his part. This was the $10,000 mortgage executed to her covering the Delmar Garden property. Having any one of these several courses open to her, she elected to bring an action against Chas. H. Garnett for damages accruing to her by reason of his alleged breach of the contract, by foreclosing the mortgage on the Delmar Garden property for such amount of damages as should be awarded to her. This she did, with the final result that her damages for the breach was fixed at $9,000 against Chas. H. Garnett, and judgment was paid by him in a manner satisfactory to her, and she satisfied the judgment. In the settlement of the $9,000 judgment she accepted a sum of money and a deed to the Delmar Garden property. It seems that in the suit filed against Chas. H. Garnett for damages for the breach of the Garnett-Storm contract, no reference was made to the judgment against Mrs. Storm in the case of Garnett v. Storm; nor was any reference made to the mortgage made by the Fielders to Williams and Hogan, and which had been purchased by Mrs. Storm and by her guaranteed and assigned to Arthur C. Hobble, nor to the case of Hobble v. Storm in which the second judgment was rendered. And, when the final settlement was made as between Chas. H. Garnett and Mrs. McHan in which the $9,000 judgment held by Mrs. McHan against Garnett was paid off and satisfied by her, no reference was made to either the Garnett v. Storm judgment or the Hobble v. Storm judgment. Yet, at the time of the payment of the judgment by Garnett, both judgments were outstanding against Mrs. Storm, who was Mrs. McHan at the time the $9,000 judgment for damages was paid off. The judgment in the case of Chas. H. Garnett v. Storm was then and now owned, or at least in the name of E. L. Garnett, by assignment. The judgment in Hobble v. Storm was then and now in the name of Arthur C. Hobble. That being

the status. can it be successfully contended that when Mrs. McHan acquired ownership of real estate, the liens created by these judgments did not attach to such real estate and become valid liens thereon? The contentions made by the plaintiffs in error are that since Chas. H. Garnett had contracted and agreed with Mrs. Storm, in the contract concerning the fair grounds tract, that Mrs. Storm should have a certain portion thereof free and clear of all liens and encumbrances, when she acquired other real estate from Chas. H. Garnett in settlement of her judgment for damages, it should also be free of lien and encumbrances; and the judgment liens in the two cases referred to should be extinguished and not attach as liens to such property. In effect, the court is asked to give effect to the Garnett-Storm contract to the extent of extinguishing the two judgments. In other words, the court is asked to breathe life into the Garnett-Storm contract of July 5, 1921, and decree specific performance thereon to the extent of passing the Delmar Garden property to Mrs. McHan free of these judgment liens. notwithstanding the fact that Mrs. McHan, or Mrs. Storm as it was then, elected to abandon the contract and declare a breach of the terms thereof, and prosecuted her suit against Chas. H. Garnett for the breach to a final judgment in the sum of $9 000 for her damages, which sum was paid her in cash and property rated by her as of the value of $9,000 and the judgment satisfied by her. Or, if the thing asked to be done is not to be considered as a part specific performance of the Garnett-Storm contract, then, we should consider and treat the two judgments as elements entering into McHan's damages for failure on the part of Garnett to perform the Garnett-Storm contract and extinguish the two judgments for her benefit.

In Herbert v. Wagg et al., 27 Okla. 674, 117 Pac. 209, this court, in discussing a kindred question, said:

"The general rule is that when the law gives several means of redress or kinds of relief, predicated on conflicting theories, the election of one of them operates as a bar to the subsequent adoption of the others. 15 Cyc. 259; Missouri Pacific Ry. Co. et al., v. Henrie, 63 Kan. 330 65 Pac. 665; Blaker v. Morse, 60 Kan. 24, 55 Pac. 274; New York, L. E. & W. R. Co. v. Estill, 147 U. S. 591, 37 Law Ed. 292; Conrow et al. v. Little et al., 115 N. Y. 387, 22 N. E. 346; Terry et al. v. Munger, 121 N. Y. 161, 24 N. E. 272. And the foregoing rules apply to the measure of damages or relief to which a party supposes himself entitled . N. K. Fairbank Co. v. Nicolai, 167 Ill. 242; Cleveland C. O. & St. L. Ry. Co. v. Stephens, 74 Ill. App. 586;

Leavenworth Northern & Southern Ry. Co. v. Curtain et al., 51 Kan. 432.".

In First Trust & Savings Bank v. Bloodworth et al. 70 Okla. 317, 174 Pac. 545, this court, in discussing the question of election of remedies, said:

"It is a well-settled principle of law that, when a party has two inconsistent remedies and elects one and pursues it to judgment with full knowledge of the facts, such election constitutes a bar to pursuing the alternative remedy. The rule laid down in 15 Cyc. pp. 259, 260, is as follows: 'By a preponderance of authority the mere commencement of any proceeding to enforce one remedial right in a court having jurisdiction to entertain the same, is such a decisive act as constitutes a conclusive election, barring the subsequent prosecution of inconsistent remedial rights.' "

In Levin v. Hunt, 70 Okla. 63, 172 Pac. 940, in the second paragraph of the syllabus, it is said:

"On breach of contract the injured party has his choice of three remedies, in a proper case. He may sue on the contract for the damages he has sustained by reason of the breach, or he may conider the contract terminated by the breach and sue on the quanttum meruit under an implied contract, and recover for his services and the amount expended by him on the contract, or he may have recourse to equity and compel a specific performance of the contract."

In Elliott on Contracts, section 2097, it is said in reference to rights of action on contracts:

"So, where the party brings an action at law for damages for the breach, he cannot thereafter maintain a suit in equity to enforce specific performance."

This rule is supported by many authorities: Sweet v. Montpelier Sav. Bank & Trust Co., 69 Kan. 641. 77 Pac. 538; Ullrich v. Bigger et al., 81 Kan. 756, 106 Pac. 1073; Naugle et ux. v. Naugle et ux., 89 Kan. 756, 132 Pac. 164; Abbott v. 76 Land & Water Co., 161 Cal. 42 118 Pac. 425; Buckmaster v. Gundy, 3 Gilman (8 Ill.) 626.

In Marston v. Humphrey, 24 Me. 513, it is said:

"If the plaintiff in equity once had a right to a specific performance of a contract, and had, nevertheless, prosecuted his claim at law for damages for the breach of it to judgment, his claim to a specific performance would no longer remain."

To like effect is Campbell v. Kauffman Milling Co., 42 Fla. 328, 29 South. 435.

In Slaughter et al. v. La Compagnie Francaises Des Cables Telegraphiques, 57 C. C. A. 19, 119 Fed. 588, it was said:

"A party to a contract, who has brought an action at law for its breach and prosecuted the same to a judgment for damages, cannot thereafter maintain a suit in equity to enforce specific performance."

From the authorities here cited we conclude that when Mrs. McHan elected to sue for a breach of the Garnett-Storm contract of July 5, 1911, she abandoned her rights to have any part of that contract performed by Chas. H. Garnett. Under the authorities, as we see them she was not entitled to have the double remedy of damages for the breach and specific performance of the contract according to its terms.

Then, is she entitled to have the judgments extinguished as a part of her damages for the breach of the Garnett-Storm contract?

In Madden v. Smith, 28 Kan. 798, it was held:

"Now, counsel for defendant very properly say that the plaintiff, by bringing one action and recovering judgment thereon, is estopped from any further action on the same contract; that it matters not whether plaintiff claimed or recovered in the first action all that he was entitled to by reason of his contract; it is enough to say that there was but one single and indivisible contract. If that existed, but one action could be maintained on it, and whether the plaintiff claimed much or little, and whether he claimed all or less than all he was entitled to, is entirely immaterial. One contract gives one cause of action, and the plaintiff, maintaining one, is estopped from any future or further action. This rule of law is familiar and rests upon the soundest principles and we think is controlling in the present case."

Other cases to like effect are: Witaker v. Hawley, 30 Kan. 317, 1 Pac. 508; Wichita & W. R. Co. v. Beebe, 39 Kan. 465, 18 Pac. 502; Henry v. McKittrick, 42 Kan. 485, 22 Pac. 576; Secor v. Sturgis, 16 N. Y. 548; Sims & Co. v. Zane, 24 Pa. St. 242; Collins et al. v. Gleason et al., 47 Wash. 62, 91 Pac. 566, 125 Am. St. Rep. 891; Kline v. Stein (Wash.) 90 Pac. 1041; McKnight v. Minneapolis St. Ry. Co., 127 Minn. 207, 149 N. W. 131, L. R. A. 1916D 1164; Pomeroy v. Prescott, 106 Me. 401, 76 Atl. 898, 138 Am. St. Rep. 347, 21 Ann. Cas. 574.

In Tootle v. Kent, 12 Okla. 674, 73 Pac. 310, it was said:

"Under our Code of Civil Procedure, all of the rights of the parties, both legal and equitable, as far as they are consistent with one another, and affect the same parties, may be united in one action and merged in a single judgment.

"A single and entire cause of action cannot be divided into several claims and separate actions maintained thereon."

In Kansas City, M. & O. Ry. Co. v. Shutt, 24 Okla. 96, 104 Pac. 51, the court said:

"An action for a tort, or based upon a wrongful act, is single and indivisible, and gives rise to but one liability."

The plaintiff in Storm v. Garnett elected to sue Garnett for damages for breach of the contract. There was one contract, one breach thereof, and one right of action accruing to her for such breach. She availed herself of this right of action. She prosecuted her action to final judgment and was entitled to one satisfaction, and this she had when she accepted payment of the $9,000 judgment and satisfied the judgment. It being one breach, giving her a right of action, she could not divide such cause of action and have successive recoveries. All of these matters were in existence at the time she filed her damage suit and no reference was made to the Garnett v. Storm judgment nor to the mortgage of the Fiedlers to Williams and Hogan, as existing elements of her damages accruing out of Garnett's breach of the Garnett-Storm contract. Under the authorities cited it seems to be the rule that it was necessary for Mrs. McHan to include in her damage suit every element of her damages growing out of the breach of the contract for which she desired to make recovery. If she left any of said elements of damages out of her case, it was her own fault. The litigation growing out of her damage suit bound her in all matters, not only such as she presented, but as to all matters which she could have presented in that case as elements of her damages. She had a legal right to sue for all her damages growing out of the breach of the Garnett-Storm contract; and when she sued, it matters not whether she sued for all her elements of damages or only part of them; the recovery made satisfied her claim for all the elements included herein and all that might have been included. Just as was said in Madden v. Smith, supra:

"* * * It matters not whether plaintiff claimed or recovered in the first action all that he was entitled to by reason of his contract; it is enough to say that there was but one single and indivisible contract. If that existed, but one action could be maintained on it, and whether the plaintiff claimed much or little, and whether he claimed all or less than all he was entitled to is entirely immaterial."

If the Garnett v. Storm judgment and the mortgage made by the Fiedlers to Williams and Hogan constituted a part of Mrs.

McHan's damages growing out of the breach of the Garnett-Storm contract, Mrs. Storm should have included them in her damage suit against Chas. H. Garnett; and when she did not include them therein, the litigation of her damage suit, recovery, and satisfaction of the judgment for damages will be held to constitute an abandonment of the claim that those matters were elements of damages growing out of the breach of the Garnett-Storm contract. These matters not having been included in the damage suit as elements of damage growing out of the breach of the Garnett-Storm contract, if they are to be treated as elements of damage growing out of the breach of that contract, such treatment of them must necessarily arise upon some agreement of the parties. After Mrs. Storm recovered her judgment of $9 000 against Chas. H. Garnett for the breach of the Garnett-Storm contract. she and Garnett entered into an agreement with reference to making settlement of her judgment, and it seems to have been agreed that in satisfaction of the judgment Garnett should pay her $300 in cash and cause to be conveyed to her the Delmar Garden property, and the cash was paid, the deed made, and the property delivered, and judgment satisfied. At that time the mortgage made by the Fiedlers to Williams and Hogan had been merged into a judgment against Mrs. Storm. No reference was made in the agreement satisfying the $9,000 judgment, to either of the judgments, although Mrs. McHan must have well known of their existence; and no agreement was made in the settlement extinguishing these judgments. Since they were not included in the suit for damages and were not taken into consideration in the settlement of the judgment, and no agreement was made extinguishing them, we must conclude that these judgments remained valid, binding judgments against Mrs. McHan.

The judgment recovered by Mrs. Storm (Mrs. McHan here) against Chas. H. Garnett for breach of the Garnett-Storm contract is a bar to any further action for such breach. Baker v. Leavitt, 54 Okla. 73. 153 Pac. 1100; Dill v. Flesher (Cal.) 175 Pac. 359; Johnson v. Gillett, 66 Okla. 308, 168 Pac. 1031.

This court has repeatedly held that a judgment and determination of a court of competent jurisdiction upon the merits of a controversy is final and conclusive between the parties. not only as to the matters presented, but also as to all matters which might have been presented. Alfrey v. Colbert, 44 Okla. 246, 144 Pac. 179; Comanche Ice & Fuel Co. v. Binder & Illery, 70 Okla. 28, 172 Pac. 629; Bruner v. Bearden, 80 Okla. 154, 195 Pac. 117; Baker v. Vadder, 83 Okla. 140, 200 Pac. 994; Freeland v. Dolan, 84 Okla. 286, 203 Pac. 182; Cromwell v. Hamilton, 87 Okla. 66, 209 Pac. 395; Stutsman v. Williams, 87 Okla. 64, 209 Pac. 405; Brisley v. Mahaffey, 87 Okla. 257, 209 Pac. 920; Good v. First National Bank, 88 Okla. 110. 211 Pac. 1051; Miller v. Gorman, 88 Okla. 229, 212 Pac. 983; Goodeagle v. Moore, 89 Okla. 211, 214 Pac. 725.

It is insisted by the plaintiffs in error that at the time the Delmar Garden property was deeded to Mrs. McHan in part satisfaction of the judgment recovered in the case of Storm v. Garnett, the title was warranted to the Delmar Garden property to Mrs. McHan, and the warranty of title had the effect of extinguishing the judgments in question. This contention cannot be maintained. These judgments were against Mrs. Storm, Mrs. McHan here and were not judgments against Chas H. Garnett, nor against the party who made conveyance to Mrs. McHan. The deed is a plain ordinary warranty deed. In such a deed the grantor's warranty is against judgments taken against the grantor. We know of no case where a warranty deed warranting against judgments has been held to warrant against judgments outstanding against the grantee. If, in this deed the grantor had expressly warranted against the judgment in Garnett v. Storm and against the judgment in Hobble v. Storm, a different situation would be presented; but the deed carries no such provision. And, hence, the warranty contained in the deed cannot be treated as a warranty against the effect of these judgments which were outstanding against the grantee named in the deed. A grantor warrants against his own obligations or judgments outstanding against him, and not against those outstanding against his grantee, unless such intention should be expressed in the instrument.

2 The second question is whether or not the claim made by Mrs. McHan that the Delmar Garden property constituted the homestead of her and her family can be maintained. It is an admitted fact that the Delmar Garden property has never been occupied by Mrs. McHan or any part of her family. The claim that the Delmar Garden property constituted the homestead of Mrs. McHan must, therefore, be based upon something aside from actual occupancy. Mrs. McHan became the owner of the property

on the 16th of February, 1918. This suit was filed on May 12, 1920, and Mrs. McHan died on the 16th of February, 1921. The cause was revived in the name of Geo. E. Storm, as her administrator, and was tried on the 26th day of January, 1922. Some time prior to the death of Mrs. McHan her deposition was taken and the same was used in evidence in the trial of this action. As bearing upon the question of homestead rights, Mrs. McHan testified to the following effect: That at the time of acquiring the Delmar Garden property it became and was all the property she owned; that she had all the time lived in rented property, and used the proceeds of the Delmar Garden property to keep a roof over the heads of her family, and had she not become ill she would have tried to build on the south side of this property and have lived there, but she had not been able either physically or financially to get started there; that she had erected no buildings on the property, but had made an allowance out of the rents of the property to clean up trash and do a little grubbing on the property; that she intended to use the property as her homestead; that the property was let to tenants from the time she got it. It appears from other witnesses that Mrs. McHan and her husband constituted the family and they seem to have been living apart from each other. It seems that some disagreement arose between Mrs. McHan and her husband about renting this property and Mrs. McHan rented it out without consulting him, and he left her, and a divorce suit was filed by one or the other of the parties; and Mrs. McHan was interested in seeing that her husband did not get possession of any part of the land; and wanted her tenants to keep McHan off the property. He was cultivating some adjoining land, but if he ever cultivated any part of the Delmar Garden property it came about because they were not sure about the division line between the two properties; and it was not shown that McHan himself was ever in possession of any of the property. It appears that her statements to others with reference to living on the property were that if she and her husband were younger and better fixed financially, and could acquire other property near there on which they could live and use the Delmar Garden tract in connection therewith they would like to make it their home. They seem to have been rather aged people and not likely to be better fixed financially so as to improve the property so that it might be used as a home. The best that we can gather from the record is that that there was some sort of dwelling house improve-

ments on the property when Mrs. McHan acquired ownership, and that some grubbing was done by the tenants for which Mrs. McHan claimed to have paid; but this seems to have been contradicted by the tenant; and the rent was reduced one year by the amount of $50 if the tenant would raise the levee on one side of the property, and this was done and then washed down again when the overflow came. The question then is, Do these things constitute constructive occupancy?

Section 1 of art. 12 of the Constitution of Oklahoma provides:

"The homestead of any family in this state, not within any city, town or village, shall consist of not more than one hundred and sixty acres of land, which may be in one or more parcels, to be selected by the owner. The homestead within any city, town, or village owned and occupied as a residence only, shall consist of not exceeding one acre of land, to be selected by the owner * * * "

Substantially this provision was re-enacted into statute in section 6597, Comp. Stat. 1921.

In Watson v. Manning, 56 Okla. 295, 156 Pac. 184, and in Bouse et al. v. Stone et al., 65 Okla. 5, 162 Pac. 479, this court held that:

"To entitle one to claim a homestead in a city as exempt from levy and sale under execution, the property so claimed must be owned and occupied as a homestead, or have been impressed with the homestead character and no other homestead acquired."

In Laurie et al. v. Crouch et. ux., 41 Okla. 589, 139 Pac. 304, the question before the court was whether or not the property could be impressed with the homestead character without actual occupancy, and the court said:

"And we are led to believe that, under a liberal rule of construction, situations may be presented where the fixed intention to presently occupy a place as a home, accompanied with overt acts of preparation, such as fitting up or building or repairing a house for occupancy, followed by actually removing therein without unreasonable delay would have the effect, at least in equity, of impressing the homestead character, so as to render the property exempt against claims arising prior to actual occupancy."

Again, the same question was before the court in Hyde et al. v. Ishmael et ux., 42 Okla. 279, 143 Pac. 1044, when the court said:

"Under the law, to impress land with the homestead character without actual occupancy, it is essential that the claimant

should not only have the fixed purpose and intention to establish a home upon the land, but his attempt to occupy should follow the preparation of the land for a home, the construction of buildings and making improvements thereon, without unreasonable delay. This is necessary in order to show good faith, and in order to determine the question of whether or not the land has been impressed with the homestead character, the court must be advised of the time intervening between the various acts of preparation and the establishment of actual residence upon the land, or an attempt to do so. The very purpose of the homestead law is to provide a shelter for the family—to protect the weak and helpless against their own improvidence, as well as the designs of the unscrupulous. This purpose is effectuated on the part of the courts by a liberal interpretation of the provisions of the homestead laws."

In Illinois Life Ins. Co. v. Rogers et al., 61 Okla. 43, 160 Pac. 56, this court held that:

"A purchase of a homestead within the statutory limits as to quantity and value with the intention in good faith of presently residing on it, or residing thereon as soon as some temporary obstacle to such residence can be removed or some necessary preparation for the same can be made, is equivalent to actual occupancy of the residence, and said property is exempt from lien, levy or forced sale."

In Davis v. First State Bank, 65 Okla. 211, 166 Pac. 92, it is held that:

"The homestead character may be impressed upon a tract of land without actual occupancy, provided the claimant has a fixed intention to make a home thereon, and such intention is evidenced by overt acts of preparation in the erection of permanent improvements and in preparation of the land for a home.

"The actual occupancy of the land, or an attempt in good faith to do so, must follow the overt acts of preparation without unnecessary delay."

Other authorities to like effect are: American Surety Co. v. Gibson, 65 Okla. 206, 166 Pac. 112; McFarland v. Coyle, 69 Okla. 248, 172 Pac. 167; Foley v. Holtkamp, 28 Tex. Civ. App. 123, 66 S. W. 891.

In Harris et al. v. Cherokee State Bank, 82 Okla. 151, 198 Pac. 878, the claim was made that certain inherited land constituted the homestead. This court said:

"* * * That the land is unimproved, but she intended to keep it for their homestead, and that she formed this intention after she was dispossessed of her own allotment, it having been sold under foreclosure sale; that she did not reside upon the land, but resided with her mother; that the plaintiffs in error had been in litigation for nearly two years and had sickness in the family for two years past; that their expense on account of litigation and sickness had been very heavy, and because thereof she was unable to improve the land; that she intended to move on to said land as soon as she was able to make the necessary preparations to live on it; that said land was incumbered by a mortgage of $500, but she intended to pay this mortgage debt.

"The evidence fails to show that this land was acquired for a home, or that the intention to occupy the same as a home was accompanied with any overt act of preparation. The mere intention to occupy unimproved lands at some future time, unaccompanied with any act of preparation of the land for a home, such as the construction of buildings and making improvements thereon without unreasonable delay, is insufficient to impress the land with the homestead character. Laurie et al. v. Crouch, 41 Okla. 589, 139 Pac. 304; Hyde v. Ishmael, 42 Okla. 279, 143 Pac. 1044; McFarland v. Coyle, 69 Okla. 248, 172 Pac. 67; McCray v. Miller, 78 Okla. 16, 184 Pac. 781; Merritt v. Park Nat. Bank of Sulphur, 77 Okla. 148, 178 Pac. 232; Johnson v. Johnston, No. 10,-125 (decided May 24, 1921,) 82 Okla. 259, 200 Pac. 204."

In Sharpe et al. v. Wright, 88 Okla. 16, 211 Pac. 70, this court said, with reference to impressing the homestead character without actual occupancy:

"While the homestead character may be impressed upon premises without actual occupancy, if the claimant has a fixed intention to make a home thereon and evidences such intention by overt acts of preparing the same for a home, yet the actual occupancy of the land or an attempt in good faith to occupy the same must follow the overt acts of preparation without unreasonable delay. Davis v. First State Bank of Idabel, 65 Okla. 211, 166 Pac. 92; Harris v. Cherokee State Bank, 82 Okla. 151, 198 Pac. 878."

In this case more than two years had elapsed between the time of acquiring ownership of the Delmar Garden property and filing suit in which the claim is made that it constitutes the homestead of Mrs. McHan and her family. Mrs. McHan at no time either occupied the property or made improvements thereon for the purpose of making it a home. It might have been her intention that at some future date she would occupy it as her home, but such intention, with nothing more, was insufficient to impress it with the homestead character. The same condition existed after the suit was filed and the homestead claim made, until the date of her death. Under the authorities above cited and the facts presented here, we are forced to the conclusion that the claim of homestead exemptions cannot be maintained.

3. As to the matter of priorities of liens

there is not much dispute. The property was acquired by Mrs. McHan on the 16th of February, 1918, at which time the judgment liens attached. The rights acquired by Paul and Swisher under the mortgages were acquired subsequent to that date. We conclude that the judgments in Garnett v. Storm and Hobble v. Storm are prior liens to the liens created by the mortgages.

We have carefully examined the entire record and the briefs of the respective parties, and have given consideration to all the assignments of error. The judgment of the trial court denied the plaintiff the relief sought; and we conclude that the judgment is amply supported by the record.

We recommend that the judgment of the trial court be affirmed.

By the Court: It is so ordered.